UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------- X
                                                  :
IN RE VALEANT PHARMACEUTICALS    :   Case No. 3:16-cv-03087-MAS-LHG
INTERNATIONAL, INC. THIRD-PARTY     :
PAYOR LITIGATION                                :
                                                  :             *ELECTRONICALLY FILED*
                                                  :
------------------------------------- X

# REPLY IN SUPPORT OF DEFENDANT
# MATTHEW DAVENPORT'S MOTION TO STAY

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendant Matthew Davenport*

Of Counsel:
    James V. Noblett
    Jonathan D. King (*pro hac vice* pending)
    Raja Gaddipati (*pro hac vice* pending)
    Allyson Poulos (*pro hac vice* pending)

On the Brief:
    Jonathan D. King
    Raja Gaddipati
    Allyson Poulos

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT .................................................................................................................. 5

    A. A Limited Stay Of Non-Documentary Discovery As To Only Andrew Would Not Protect Matthew's Private Interests In Mounting A Full And Fair Defense Of This Action .................................................................................. 5

    B. A Limited Stay Of Non-Documentary Discovery As To Only Andrew Would Not Serve The Court's Interests In Resolving This Action Efficiently ............................................................................................................. 7

III. CONCLUSION ............................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*,
   225 F. Supp. 2d 263 (E.D.N.Y. 2002) .................................................................. 2

*Cont'l Ins. Co. v. Securi Enters., Inc.*,
   No. 10 C 4586, 2010 WL 5392735 (D.N.J. Dec. 21, 2010) ................................ 4

*De'Omilia Plastic Surgery, PC v. Sweeton*,
   No. 12 C 06415, 2013 WL 6070037 (D.N.J. Nov. 18, 2013) .............................. 2

*F.T.C. v. Pac. First Ben., LLC*,
   361 F. Supp. 2d 751 (N.D. Ill. 2005) ................................................................... 2

*Freedom Med. Inc. v. Gillespie*,
   No. 06 C 3195, 2006 WL 3791339 (E.D. Pa. Dec. 21, 2006) ............................. 6

*In re Adelphia Commc'ns Sec. Litig.*,
   No. 02 C 1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003) ........................... 1

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
   No. 06 C 5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ............................... 10

*Librado v. M.S. Carriers, Inc.*,
   No. 02 C 2095, 2002 WL 31495988 (N.D. Tex. Nov. 5, 2002) .......................... 2

*Parker v. Dawson*,
   No. 06 C 6191, 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) ......................... 14

*Peterson v. Matlock*,
   No. 11 C 2594, 2011 WL 5416571 (D.N.J. Nov. 7, 2011) .................................. 4

*S.E.C. v. Downe*,
   No. 92 CIV. 4092 (PKL), 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) ........... 2, 12

*Salcedo v. City of Chicago*,
   No. 09 C 05354, 2010 WL 2721864 (N.D. Ill. July 8, 2010) .............................. 1

*Stamile v. Cnty. of Nassau*,
   No. 10 C 2632, 2011 WL 1754125 (E.D.N.Y. Jan. 31, 2011) .......................... 14

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*,
    No. 01 C 5530, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002) ........................... 2

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
    175 F. Supp. 2d 573 (S.D.N.Y. 2001) .................................................................. 2

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995) ........................................................... 2, 12, 13

*U.S. v. Pungitore*,
    910 F.2d 1084 (3rd Cir.1990) ............................................................................ 11

*United States v. All Meat & Poultry Prod.*,
    No. 02 C 5145, 2003 WL 22284318 (N.D. Ill. Oct. 3, 2003) .............................. 1

*United States v. Doe*,
    465 U.S. 605 (1984) ........................................................................................ 3, 5

*United States v. Hubbell*,
    530 U.S. 27 (2000) .............................................................................................. 5

*Volmar Distribs., Inc. v. N.Y. Post Co.*,
    152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................. 2, 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 12

**STATUTES**

RICO ............................................................................................................... passim

**OTHER AUTHORITIES**

Fifth Amendment .......................................................................................... passim

Rule 23 ............................................................................................................... 12

Rule 23(a) .......................................................................................................... 13

ii

Defendant Matthew Davenport ("Matthew") submits the following reply brief in support of his motion to stay this action:

## I. PRELIMINARY STATEMENT

Plaintiffs affirmatively allege in their Consolidated Class Action Complaint ("Complaint") that Andrew Davenport ("Andrew") was a "central participant" in the alleged "Valeant Enterprise" that gives rise to their RICO claims against Matthew and the other defendants. (Compl. ¶ 36). Accordingly, Plaintiffs do not, and cannot, dispute the core factual predicate for Matthew's motion to stay – that a criminal indictment has been returned against a "central figure" in this civil case.

Under those circumstances, "where the indicted individual defendant[] appear[s] to be the central figure[] in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants" so that the civil action can be adjudicated in a fair and efficient manner. *United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318, at *4 (N.D. Ill. Oct. 3, 2003); *see also Salcedo v. City of Chicago*, No. 09 C 05354, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010) ("Where, as here, the indicted individual Defendants appear to be central figures in both civil and criminal proceedings, a stay is appropriate to all Defendants."); *In re Adelphia Commc'ns Sec. Litig.*, No. 02 C 1781, 2003 WL 22358819, at *5 (E.D. Pa. May 13, 2003) (entering complete stay as to all defendants because "key figures in both the civil

1

and criminal cases" were criminally indicted); *S.E.C. v. Downe*, No. 92 CIV. 4092 (PKL), 1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993) (entering complete stay as to all defendants because "central figure" in civil case was criminally indicted); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2002) (entering complete stay as to all defendants because the "central figure" in civil case was criminally indicted); *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 41 (S.D.N.Y. 1993) (same); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1141 (S.D.N.Y. 1995) (same).[1]

Ignoring the principal basis for Matthew's motion to stay, Plaintiffs focus their opposition brief on irrelevant or otherwise meritless arguments.

---

[1] By contrast, in many of the cases cited by Plaintiffs, there was no pending criminal indictment against any of the parties to the civil action. *See De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12 C 06415, 2013 WL 6070037, at *2-3 (D.N.J. Nov. 18, 2013) (the indicted defendant "already accepted a plea agreement in the criminal case against her in the District of New Jersey" and therefore "presumably waiv[ed] her Fifth Amendment privilege against self-incrimination"); *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01 C 5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002) ("In the instant case, no indictments have been issued."); *F.T.C. v. Pac. First Ben., LLC*, 361 F. Supp. 2d 751, 756 (N.D. Ill. 2005) ("Magistrate Brown took into account the fact that an indictment had not yet been handed down against Orphanou; other district courts have also reasoned that an indictment should be issued before a stay is granted."); *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("[T]here is nothing to suggest that indictments are imminent."); *Librado v. M.S. Carriers, Inc.*, No. 02 C 2095, 2002 WL 31495988 (N.D. Tex. Nov. 5, 2002) (the indicted individual was a *non-party* to the civil case).

First, Plaintiffs contend that "there are *no* criminal charges pending against Matthew," and this case should not be stayed as to Matthew based "only on a *potential* that [he] . . . might be prosecuted." (Pltfs.' Consol. Mem. of Law in Opp. to Mots. for an Order Staying this Action, ECF No. 59 ("Pltfs. Br.") at 2, 9, 13 (emphasis in original).) Matthew seeks a stay, however, on the basis of the *actual* prejudice that he *will* suffer from the criminal indictment that already has been returned against Andrew, not the "*potential*" prejudice that he *may* suffer if a criminal indictment is returned against Matthew. (Brief in Supp't of Matthew Davenport's Mot. to Stay, ECF No. 56-1 ("Matthew Br.") at 1, 6.)

Second, Plaintiffs assert that a limited "stay of non-documentary discovery as to Andrew" would obviate any prejudice to Matthew because he "would have the ability to seek documents from Andrew." (Pltfs. Br. at 2, 11.) Not so. As an initial matter, Andrew may assert his Fifth Amendment rights in response to documentary discovery. The production of documents can be a testimonial act, such that Andrew would risk waiving his rights against self-incrimination by producing documents in this case. *See United States v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be. A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect.") Even if Andrew risked such waiver and produced

documents, Matthew still would be prejudiced by his inability to rely on answers to interrogatories, deposition testimony, and affidavits from Andrew during the class certification and summary judgment phases of this action.

Third, and finally, Plaintiffs argue that a stay will not serve the Court's interests because there are a few differences between this case and the criminal case. (Pltfs. Br. at 3-5, 8-9.) Of course, courts routinely enter parallel proceeding stays despite the absence of "perfect symmetry" between the civil and criminal actions. *See, e.g., Peterson v. Matlock*, No. 11 C 2594, 2011 WL 5416571, at *4 (D.N.J. Nov. 7, 2011) (entering stay despite absence of "perfect symmetry" between civil case and criminal investigation); *Cont'l Ins. Co. v. Securi Enters., Inc.*, No. 10 C 4586, 2010 WL 5392735, at *9 (D.N.J. Dec. 21, 2010) (same). In this case, where Plaintiffs allege a RICO conspiracy and seek to impute Andrew's conduct to the other defendants, a complete stay will allow the criminal proceedings to narrow the scope of discovery on material issues of fact (*e.g.*, the parties' participation in the management or operation of the alleged RICO enterprise and the alleged RICO predicate acts), prevent duplicative discovery, and otherwise streamline this action.

## II. ARGUMENT

The Court should enter an immediate and complete stay of this action as to all parties, rather than force the parties to engage in piecemeal litigation under Plaintiffs' proposed limited stay of non-documentary discovery as to only Andrew, and without access to a "central participant" in this case..

### A. A LIMITED STAY OF NON-DOCUMENTARY DISCOVERY AS TO ONLY ANDREW WOULD NOT PROTECT MATTHEW'S PRIVATE INTERESTS IN MOUNTING A FULL AND FAIR DEFENSE OF THIS ACTION.

Plaintiffs, of course, do not dispute their own allegation that Andrew is a "central" figure in this case. As such, Matthew's constitutional due process rights would be infringed if he is forced to defend Plaintiffs' claims without access to documentary and testimonial evidence from Andrew. (Matthew Br. at 7-9.) Plaintiffs respond that their proposed partial stay would avoid such prejudice to Matthew because he could "seek documents from Andrew, as well as from Philidor and Valeant." (Pltfs. Br. at 11.)

As an initial matter, even if the Court permits documentary discovery to proceed against Andrew, he nonetheless may invoke the Fifth Amendment in response to requests for production because the act of producing documents can be testimonial and therefore constitute a waiver of the producing party's rights against self-incrimination. *See Doe*, 465 U.S. at 612; *United States v. Hubbell*, 530 U.S. 27, 43 (2000) ("[W]e have no doubt that the constitutional privilege against self-

5

incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence. That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources.").

Andrew's invocation of the Fifth Amendment, in and of itself, would prejudice Matthew because Plaintiffs would very likely seek to impute the resulting adverse inference against Andrew to Matthew and the other defendants based on their RICO conspiracy allegations. Moreover, Matthew's inability to obtain the documents of an alleged "central participant" in this case, as a result of Andrew's invocation of the Fifth amendment, would constitutionally prejudice Matthew's defense of this action.

Plaintiffs suggest that Matthew instead can obtain documents from Philidor. (Pltfs. Br. at 11.) As alleged in the Complaint, however, Philidor has "ceased operations." (Compl. ¶ 36.) Accordingly, Matthew must look to Andrew, Philidor's alleged "co-founder[]," "largest beneficial owner," and "Chief Executive Officer," for documents critical to his defense of this action. (*See id.*)

By contrast, in *Freedom Med. Inc. v. Gillespie*, No. 06 C 3195, 2006 WL 3791339, at *2 (E.D. Pa. Dec. 21, 2006), cited by Plaintiffs, the corporate defendant remained as a going-concern, and the Court determined that a stay was

6

unnecessary, under those facts, because "several employees other than" the indicted defendant could make and verify the corporation's document production.

In any event, even if Andrew risks his Fifth Amendment rights by producing documents in this case or Matthew obtains Andrew's documents from Philidor, Matthew still would be prejudiced by Plaintiffs' proposed partial stay. In the absence of Andrew's testimonial participation in this case, through answers to interrogatories, affidavits, and deposition, Matthew will be unable to effectively defend himself during any phase of this litigation, whether class certification, summary judgment, or trial. (*See* Matthew Br. at 7-9.) The Court should not allow circumstances outside of Matthew's control – the criminal indictment of Andrew and the resulting possibility that Andrew will invoke the Fifth Amendment to Matthew's detriment in this case – to deprive Matthew of a full and fair defense against Plaintiffs' claims.

### B. A LIMITED STAY OF NON-DOCUMENTARY DISCOVERY AS TO ONLY ANDREW WOULD NOT SERVE THE COURT'S INTERESTS IN RESOLVING THIS ACTION EFFICIENTLY.

Plaintiffs do not dispute that stays of parallel proceeding facilitate the efficient resolution of civil actions by encouraging settlement, narrowing the scope of issues for discovery and trial, and avoiding duplicative discovery. (Matthew Br. at 9-11.) Instead, Plaintiffs complain that "Matthew offers no example of legal or factual issues in this case that may possibly be resolved, clarified, or defined in the

7

criminal proceedings" or "articulate how the criminal proceedings could potentially reduce the scope of civil discovery." (Pltfs. Br. at 14.)

As set forth in Andrew and Philidor's opening brief, the relationship between Philidor and Valeant is at the core of both the criminal and civil proceedings. Accordingly, the criminal case may streamline, or reduce the scope of discovery with respect to, a number of material issues of fact in this action, including:

- whether Valeant participated in the creation of Philidor, (*Compare* Compl. ¶ 36 ("Andrew Davenport collaborated with Valeant employees including Gary Tanner . . . to establish Philidor.") *with United States v. Tanner*, Indictment (S.D.N.Y.), ECF No. 55-2 ("Indictment") at ¶ 2 ("Philidor . . . was formed in or about January 2013 with the assistance of Valeant."), ¶ 4 ("Andrew . . . created Philidor with the assistance of Gary Tanner . . . ; Valeant; and others."));

- whether Valeant participated in the operation or management of Philidor, (*Compare* Compl. ¶ 70 ("Valeant employees were responsible for performing a variety of key business functions for the pharmacy . . . .") *with* Indictment ¶ 2 (charging that Valeant provided "financing, personnel, and business opportunities" to Philidor), ¶ 6(a) ("Tanner . . . built Philidor using Valeant human and financial resources"), ¶ 6(e) (charging that Tanner hired "a sales force to promote sales through Philidor at Valeant's expense"));

- whether Valeant exercised financial control over Philidor, (*Compare* Compl. ¶ 64 ("Valeant also exercised financial control over Philidor. On December 15, 2014, Valeant entered into a purchase option agreement . . . with Philidor wherein it paid $100 million for the option to acquire Philidor for $0 for 10 years, plus various milestone payments based on Philidor's sales.") *with* Indictment ¶ 6(d) ("Tanner promoted Valeant's purchase of an

8

option to acquire Philidor . . . for an amount exceeding $100 million in cash, and approaching $300 million in total value when including forgiveness of amounts owed by Philidor to Valeant and other expenses."));

- whether Valeant and Philidor conspired to avoid generic competition, (*Compare* Compl. ¶ 5 ("Defendants provided customers with coupons and waived patient co-pays to discourage the use of available, cheaper generic alternatives and to steer customers to more expensive branded drugs. Accordingly, absent Defendants' fraudulent scheme, patients would have sought out, and dispensing pharmacies would have substituted, generic prescriptions for Valeant's brand name drugs."), ¶ 6 ("[T]he secret pharmacy network at the heart of the Valeant Enterprise was created specifically to circumvent the problem of generic competition.") *with* Indictment ¶ 3 ("Tanner assumed primary responsibility . . . [for] 'Alternative Fulfillment' . . . , which was an attempt to redirect prescriptions for certain Valeant drugs to specialty pharmacies that would assist patients and doctors in obtaining insurance coverage for the drugs or would provide other incentives for patients to purchase Valeant-branded drugs instead of generic substitutes."));

- whether Philidor exclusively sold Valeant products, (*Compare* Compl. ¶ 64 ("Valeant was the exclusive supplier of products sold by Philidor") *with* Indictment ¶ 2 ("During the course of Philidor's existence, at least 90 percent of the drugs dispensed by Philidor were Valeant-branded drugs.")); and

- whether Andrew participated in the operation and management of Philidor, (*Compare* Compl. ¶ 36 ("Andrew Davenport was . . . the [CEO] of Philidor" and "Philidor's largest beneficial owner, holding (both personally and through a shell company . . . ) a 36.5% equity stake in Philidor.") *with* Indictment ¶ 4 ("Andrew . . . served as Philidor's CEO . . . [and] also owned over 40 percent of Philidor through a trust and a corporate entity that he controlled.").)

Moreover, the criminal proceedings may also streamline certain critical legal issues in this case. For example, if the Government proves that Valeant was

9

defrauded by Tanner and Andrew, then Valeant did not have a common purpose with, and cannot be a member of, the alleged RICO enterprise. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06 C 5774, 2009 WL 2043604, at *29 (D.N.J. July 10, 2009) (defining enterprise as "a group of persons associated together for the common purpose of engaging in a course of conduct") (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

In addition, two of the three RICO predicate acts alleged by Plaintiffs in this case are charged in the Indictment. Plaintiffs allege that Defendants committed, and conspired to commit, wire fraud and violations of the Travel Act. (Compl. ¶¶ 197, 205). The Government likewise charges Andrew with wire fraud and violations of the Travel Act. (Indictment ¶¶ 14-19).

Notwithstanding the significant factual and legal overlap between the proceedings, Plaintiffs make much of the fact that "Tanner is not a defendant in this action, and Valeant, Philidor, and Matthew have not been charged in the criminal case." (Pltfs. Br. at 4.) While that may be the case, Plaintiffs define the purported "Valeant Enterprise" in this action to include "Valeant" and therefore its employees, such as Gary Tanner. (Compl. ¶ 1, n.1.) Indeed, the Complaint contains numerous allegations that Valeant acted with respect to the purported "Valeant Enterprise" through its employee Tanner. (*See, e.g., id.* ¶ 36 (alleging that Andrew "collaborated with . . . Tanner . . . to establish Philidor), ¶ 49 (alleging that Valeant

10

"hired . . . Tanner . . . to run its own AF program through Philidor"), ¶ 65 (alleging that Valeant "hired . . . Tanner . . . to act as the drug company's special 'liaison' with Philidor and that "Tanner interacted directly with Valeant's top executives"), ¶ 66 (alleging that "Tanner supervised the operations of Philidor" and that "Tanner interacted daily with . . . Andrew" and "supervised employees who worked out of Philidor's offices").)

In light of Plaintiffs' own allegations, the absence of a perfect identity between the defendants in this case and the defendants in the criminal case is irrelevant. By asserting RICO claims, Plaintiffs seek to impute Andrew's conduct to each of the other defendants in this action, including Matthew. *See U.S. v. Pungitore*, 910 F.2d 1084, 1130 (3rd Cir.1990) ("[O]ne violates § 1962(d) . . . when [he] agrees to violate a substantive RICO offense, regardless of whether [he] personally agreed to commit the predicate crimes or actually participated in the commission of those crimes."). So it does not matter that "[t]here are no allegations in the Indictment that pertain to Matthew." (Pltfs. Br. at 9.) Given Andrew's alleged centrality to this case, and the nature of Plaintiffs' RICO claims, the Court should enter a complete stay of this action even though certain defendants have not been indicted.

A partial stay of non-documentary discovery as to only Andrew would result in significant inefficiencies during the litigation of this case to the detriment of

11

both the parties and the Court. The parties will not benefit from the development of critical factual and legal issues in the criminal proceedings. Significant areas of documentary discovery as to Andrew and documentary and non-documentary discovery as to the other parties may prove to be unnecessary. Even for those areas of discovery that are not impacted by the criminal action, given Andrew's alleged centrality to this case, both Plaintiffs and Defendants will be required to re-issue written discovery requests, amend responses to written discovery requests, and re-take depositions, in connection with both class certification and summary judgment, after the partial stay is lifted as to Andrew. *See*, *e.g.*, *Downe*, 1993 WL 22126 at *14; *Volmar Distribs., Inc.*, 152 F.R.D. at 41; *Transworld Mech., Inc.*, 886 F. Supp. at 1141.[2]

Moreover, even under Plaintiffs' proposed partial stay, the parties would not have a sufficient factual record upon which to brief class certification[3] or summary

---

[2] Plaintiffs baldly assert that "counsel can maintain a reasonable discovery schedule that accounts for the potential need for supplemental discovery following the lifting of a partial stay as to Andrew." (Pltfs. Br. at 14.) Apparently unable to fashion such a schedule, Plaintiffs fail to explain *how* a discovery schedule could both account for Andrew's alleged "central" role in this case and avoid post-stay duplication.

[3] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is

judgment until the criminal proceedings against Andrew are resolved and the partial stay is lifted. *See Volmar Distribs., Inc.*, 152 F.R.D. at 42 ("Although plaintiffs would prefer a partial over a complete stay so as to obtain discovery from at least some of the defendants, the civil trial will be postponed in either event."); *Transworld Mech., Inc.*, 886 F. Supp. 1134, 1141 (S.D.N.Y. 1995) ("even a partial stay would delay the case").

Indeed, notwithstanding their half-hearted opposition to any stay of this action in a single footnote of their brief (Pltfs. Br. at 1, n.2), by proposing a partial stay, Plaintiffs tacitly recognize that the criminal proceedings inevitably will bring this case to a halt during its early stages. Factual and legal developments during the course of those criminal proceedings may require Plaintiffs to file successive amendments to their Complaint. Rather than permit the fortuities of the criminal action to confound the efficient litigation of this case, the Court should proactively enter an immediate and complete stay. In so doing, the Court will avoid further briefing, argument, and resolution of the pending motions to dismiss a potentially stale Complaint, and avoid potentially unnecessary discovery on issues that will be

---

satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (emphasis in original; internal citations omitted).)

addressed in the criminal case. After the stay is lifted, Plaintiffs can file a single amended complaint that is fully informed by the criminal proceedings, and the parties can brief, and the Court can resolve, a single round of pleadings motions.

For all of these reasons, the Court should enter a complete and immediate stay of this action as to all parties in the interest of maximum efficiency, rather than implement the half-measure proposed by Plaintiffs. *See Parker v. Dawson*, No. 06 C 6191, 2007 WL 2462677, at *6 (E.D.N.Y. Aug. 27, 2007) ("[A]lthough a stay pending resolution of the criminal action may result in an immediate delay in the progress of the civil actions, it is likely that the resolution of the criminal action will, ultimately, further this Court's interest in the efficient disposition of the civil actions."); *Stamile v. Cnty. of Nassau*, No. 10 C 2632, 2011 WL 1754125, at *7 (E.D.N.Y. Jan. 31, 2011) (same).

### III. CONCLUSION

Matthew respectfully requests that the Court enter a complete stay of this action as to all Defendants.

Dated: April 10, 2017        Respectfully submitted,

Matthew Davenport

By:   /s/ *James v. Noblett*
      One of his attorneys

James V. Noblett (NJ-039562006)
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078

Jonathan D. King (*pro hac vice*)
Raja Gaddipati (*pro hac vice*)
Allyson Poulos (*pro hac vice*)
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606