NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. THIRD-PARTY PAYOR LITIGATION | Civil Action No. 16-3087 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Andrew Davenport and Philidor Rx Services, LLC's ("Philidor") Motion to Stay (ECF No. 55), and Defendant Matthew Davenport's Motion to Stay (ECF No. 56) (collectively, "Moving Defendants"). Plaintiffs AirConditioning and Refrigeration Industry Health and Welfare Trust Fund; Fire and Police Health Care Fund, San Antonio; and Plumbers Local Union No. 1 Welfare Fund (collectively, "Opposing Plaintiffs") filed consolidated opposition to both motions (ECF No. 59), and Moving Defendants replied (ECF Nos. 63, 64). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Moving Defendants' Motions to Stay.

**I.    Background**

Opposing Plaintiffs, Plaintiffs New York Hotel Trades Council & Hotel Association of New York City, Inc. Health Benefits Fund, and Detectives Endowment Association of the City of New York (collectively, "Plaintiffs"), are third-party payors. (Am. Compl. ¶¶ 29-33, ECF No. 27.) A third-party payor is "any organization, public or private, that pays or insures health or medical expenses on behalf of customers, members, beneficiaries, or their family members." (*Id.* ¶ 38.)

Defendant Valeant Pharmaceuticals International, Inc. ("Valeant") "is a multinational pharmaceutical and medical-device company." (*Id.* ¶ 34.) Defendant Philidor is a specialty mail-

order pharmacy that primarily dispensed Valeant-branded prescription drugs. (*Id.* ¶ 35.) Andrew Davenport founded Philidor in 2013 and served as its chief executive officer. (*Id.* ¶ 36; Andrew Davenport & Philidor's Moving Br. 3, ECF No. 55-1.) Matthew Davenport is allegedly Andrew Davenport's brother and one of Philidor's multiple owners. (Am. Compl. ¶¶ 37, 60.)

On May 27, 2016, Plaintiffs filed a Class Action Complaint and Demand for Jury Trial against Valeant and Philidor, bringing two counts under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d). (Compl. ¶¶ 127-43, ECF No. 1.) On December 14, 2016, Plaintiffs filed a Consolidated Class Action Complaint and Demand for Jury Trial against Valeant, Philidor, Andrew Davenport, and Matthew Davenport (collectively, "Defendants"), bringing similar counts under the RICO Act. (Am. Compl. ¶¶ 191-207.)

The Amended Complaint alleges, in part, that "Valeant embarked on a scheme to funnel sales of its branded drugs though a . . . network of captive pharmacies," including Philidor. (*Id.* ¶¶ 58-59.) Plaintiffs further allege that "Valeant employees worked . . . to set up Philidor . . . and to expand its operations" and that "Valeant secretly controlled Philidor" through Philidor's dependence on Valeant for personnel and sales of Valeant products. (*Id.* ¶ 64.) The Amended Complaint states that Valeant hired Gary Tanner ("Tanner") to act as a liaison with Philidor and expand its operations, and that Tanner interacted with executives of both companies and "supervised the operations of Philidor." (*Id.* ¶¶ 65-66.) Plaintiffs allege that "Valeant installed a cadre of its employees within Philidor . . . to supervise operations at the pharmacy and fraudulently increase the sale of Valeant drugs." (*Id.* ¶ 70.) The Amended Complaint describes Valeant's entrance into an agreement to pay $100 million for the option to purchase Philidor in ten years, under which "Valeant received contractual rights to literally control Philidor's operations." (*Id.*

2

¶¶ 74-75.) The agreement also included milestone payments to Philidor for reaching sales targets. (*Id.* ¶ 74.)

On January 27, 2017, Andrew Davenport and Tanner were named as defendants in an indictment filed in the United States District Court for the Southern District of New York. (Andrew Davenport & Philidor's Moving Br. Ex. 1 (Indictment), ECF No. 55-2.) The indictment charges Andrew Davenport and Tanner with: (1) Honest Services Wire Fraud Conspiracy; (2) Honest Services Wire Fraud; (3) Travel Act Conspiracy; and (4) Money Laundering Conspiracy. (*Id.*) The indictment alleges that Andrew Davenport "created Philidor with the assistance of Gary Tanner . . . [and] Valeant." (*Id.* ¶ 4.) The indictment alleges that Tanner "promote[d] Philidor's business," by causing Valeant to enter into an agreement that "built Philidor using Valeant human and financial resources," increasing Valeant's dependence upon Philidor, "secur[ing] favorable treatment of Philidor by Valeant," "promot[ing] Valeant's purchase of an option to acquire Philidor," and "promot[ing] the sale of hundreds of millions of dollars of Valeant's products through Philidor . . . by hiring a sales force . . . at Valeant's expense." (*Id.* ¶ 6.) In return, the indictment alleges that Andrew Davenport "agreed to kick back to Tanner a portion of the sums he obtained from Valeant." (*Id.* ¶ 7.)

On February 13, 2017, Valeant moved to dismiss the Amended Complaint. (ECF No. 38.) On February 14, 2017, Matthew Davenport moved to dismiss the Amended Complaint (ECF No. 42), and Andrew Davenport and Philidor moved to dismiss Plaintiffs' RICO claims (ECF No. 43). On March 14, 2017, and March 24, 2017, the Moving Defendants filed the instant Motions to Stay. (ECF Nos. 55, 56.)

## II. Discussion

A stay is not constitutionally required when a civil action overlaps with a pending criminal proceeding, but "may be warranted in certain circumstances." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). "[A] stay of a civil proceeding is an extraordinary remedy and is not favored." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citing *Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936)). "However, a court has the discretion to stay a case if the interests of justice so require." *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)).

> The factors to be considered in deciding whether to grant a stay include: 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.

*Walsh Sec., Inc.*, 7 F. Supp. 2d at 526-27.

### A. Overlap of Criminal and Civil Cases

The similarity of the issues, i.e., the extent to which the criminal and civil cases overlap, is "'the most important issue at the threshold' in determining whether or not to grant a stay." *Id.* (quoting Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). Here, the criminal proceeding alleges that Andrew Davenport and Tanner acted against the interests of Valeant, and the civil proceeding alleges that Defendants acted together against the interests of the third-party payors. While the two proceedings do not advance the same legal theories, each relies on common witnesses, events, and documents. At issue in the criminal proceeding will be the actions of Andrew Davenport and Tanner in creating and supporting Philidor with Valeant resources, driving sales of Valeant products, and causing Valeant to enter

an option agreement to purchase Philidor. These will similarly be at issue in the civil proceeding. "Therefore, it stands to reason that the same conduct . . . will be relevant in both cases, and that the civil and criminal cases are likely to share common witnesses and documents." *United States v. All Articles of Other-Sonic Gneric Ultrasound Transmission Gel*, No. 12-2264, 2013 WL 1285413, at *2 (D.N.J. Mar. 27, 2013). This overlap between the criminal and civil cases weighs in favor of granting a stay. *See Walsh Sec., Inc.*, 7 F. Supp. 2d at 527 (finding that similarity of issues between civil and criminal action weighed in favor of staying civil action).

### B.  Status of Criminal Case

While the Fifth Amendment protects individuals from compelled self-incrimination, its prohibition against adverse inferences is only applicable to criminal actions. *See Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 274 (3d Cir. 1986). "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). In considering the status of the criminal case:

> The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

*Walsh Sec., Inc.*, 7 F. Supp. 2d at 527 (quoting *Parallel Civil and Criminal Proceedings*, 129 F.R.D. at 203). Here, Andrew Davenport has been indicted and faces a risk of self-incrimination if he waives his Fifth Amendment rights or adverse inferences against him if he exercises his Fifth Amendment rights. While no indictments have been returned against any of the other Defendants, the Court finds that the status of the pending criminal case against Andrew Davenport and Tanner, material witnesses in the civil case, weighs in favor of granting a stay.

### C. Prejudice to Plaintiffs

Opposing Plaintiffs argue that they will be prejudiced by a stay because briefing on motions to dismiss has already begun, "nothing that could occur on the motions will implicate Andrew[ Davenport]'s Fifth Amendment rights," and delay in the civil case will cause "the motions to dismiss [to] languish" and thwart "Plaintiffs' efforts to obtain an expeditious resolution of their claims." (Pls.' Opp'n Br. 12, ECF No. 59.) "Delays in civil cases are fairly common . . . . [Plaintiffs have] asserted no injury that is particularly unique [beyond delay]." *Walsh Sec., Inc.*, 7 F. Supp. 2d at 528. Plaintiffs are protected from continuing losses by the ability to obtain interest at judgment, and have shown no risk of the dissipation of assets by Defendants. *See id.* Accordingly, the Court finds there is insufficient prejudice to Plaintiffs in granting a stay.

### D. Burden on Defendants

As discussed above, Andrew Davenport faces a risk of self-incrimination or adverse inferences against him if the civil case proceeds. Although "it is not unconstitutional to force a defendant into this choice, . . . a court may nevertheless exercise its discretion to stay the civil case in the interests of justice." *Walsh Sec., Inc.*, 7 F. Supp. 2d at 528. Here, the Court finds that the burden on Andrew Davenport, as well as the burden on other Defendants should Andrew Davenport exercise his Fifth Amendment rights during discovery until the resolution of the criminal case, weigh in favor of staying all proceedings until the conclusion of the criminal case.

### E. Interests of the Court

It is "within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872-73 (3d Cir. 1976) (citation omitted). While Opposing Plaintiffs argue that there are pending motions to dismiss that could be decided without burden on Andrew

Davenport, the Court finds that, given the substantial overlap between the criminal proceeding and the civil proceeding, it is likely that "resolution of the criminal case [will] moot, clarify, or otherwise affect various contentions in the civil case." *Id.* at 873. Accordingly, the Court finds that it is in its interest to grant the stay.

### F. Public Interest

"Courts have denied stays where the civil case, brought by a government agency, was intended to protect the public by halting the distribution of mislabeled drugs . . . or the dissemination of misleading information to the investing public." *Walsh Sec., Inc.*, 7 F. Supp. 2d at 529 (citation omitted). Here, the Court finds that there is no similar harm to the public that would result from granting a stay of proceedings.

## III. Conclusion

For the reasons set forth above, the Court GRANTS Andrew Davenport, Philidor, and Matthew Davenport's Motions to Stay all proceedings. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 9th, 2017