**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. THIRD-PARTY PAYOR LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No. 16-3087(MAS)(LHG)**

**(ORAL ARGUMENT REQUESTED)**

**Motion Day:  November 4, 2019**

---

**VALEANT PHARMACEUTICALS INTERNATIONAL, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (admitted *pro hac vice*)
Craig S. Waldman (admitted *pro hac vice*)
Dean McGee (admitted *pro hac vice)*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Valeant Pharmaceuticals International, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND .................................................................................................... 2

    I.      PLAINTIFFS' ALLEGATIONS ............................................................... 2

          A.    The Alleged Misstatements Constituting Fraud ......................... 3

               1.    Alleged Concealment of a "Secret Network" of Pharmacies ......... 3

               2.    Alleged Submission by Philidor Employees of Misleading Prescription-Payment Claims ........................................... 4

               3.    Alleged Shipments by Philidor of Unrequested Prescription Refills ......................................................... 5

               4.    Alleged Co-Pay Waivers ..................................................... 5

          B.    The Alleged Conspiracy ........................................................... 6

          C.    Andrew Davenport's Conviction for Defrauding Valeant ........... 6

          D.    Plaintiffs' Purported Standing to Sue .......................................... 7

    II.     COURT'S GRANT OF A STAY TO STREAMLINE ISSUES ......................... 7

ARGUMENT ........................................................................................................ 9

    I.      PLAINTIFFS DO NOT HAVE STANDING TO BRING THIS SUIT ................. 9

          A.    Plaintiffs Do Not Allege a Direct Injury ...................................... 9

          B.    Plaintiffs' Theory of Indirect Harm Is Too Attenuated to Support a Finding of Proximate Causation ............................ 11

          C.    The Independent Acts of Third Parties Separate the Alleged Fraud from the Asserted Injury ................................. 12

    II.     PLAINTIFFS DO NOT ASSERT A VIABLE PREDICATE ACT ..................... 13

          A.    Securities Fraud Cannot Serve as a RICO Predicate Act ........... 13

          B.    Plaintiffs' Amendments Underscore that the Alleged Conduct Sounds in Securities Fraud ....................................... 14

    III.    PLAINTIFFS HAVE NOT PLED THE ELEMENTS OF RICO ..................... 15

          A.    Plaintiffs Have Not Alleged the Existence of a RICO "Enterprise" ......... 16

1.     Andrew Davenport's Conviction for Defrauding Valeant Precludes the Argument that Valeant and Davenport Formed an Enterprise 16

2.     Plaintiffs Fail to Explain How the "Valeant Enterprise" Exerted Control over its Members ............................................................ 18

B.     Plaintiffs Have Not Alleged a Pattern of Racketeering Activity ............. 19

1.     Plaintiffs Fail to Allege Mail or Wire Fraud With Particularity ... 20

2.     Plaintiffs' Reliance On The Travel Act Is Similarly Unavailing .. 24

C.     Plaintiffs' Claims Are, At Most, Repackaged Breach of Contract or Tortious Interference with Contract Claims, Not RICO Claims ............... 25

IV.     PLAINTIFFS' CONSPIRACY CLAIM FAILS .................................................... 25

A.     A Conspiracy Claim Cannot Be Sustained Absent a Viable RICO Claim ...................................................................................................... 25

B.     Plaintiffs' Allegations Demonstrate a Commercial Relationship ............. 26

CONCLUSION ..................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Abbot Labs. v. Adelphia Supply USA*,
  2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ............................................................. 26

*Absolute Power Sys., Inc. v. Cummins, Inc.*,
  2016 WL 6897782 (D.N.J. Nov. 23, 2016) ......................................................... 19

*Adams v. Teamsters Local 115*,
  214 F. App'x 167 (3d Cir. 2007) ....................................................................... 26

*Alcman Servs. Corp. v. Joseph A. Cairone, Inc.*,
  1992 WL 50097 (E.D. Pa. Mar. 10, 1992) .......................................................... 22

*Annulli v. Panikkar*,
  200 F.3d 189 (3d Cir. 1999) ............................................................................. 25

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................................... 9, 10

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
  189 F.3d 321 (3d Cir. 1999) ....................................................................... 13, 15

*Beck v. Prupis*,
  529 U.S. 494 (2000) ......................................................................................... 26

*Birdsall v. Rivera*,
  2017 WL 5951620 (D.N.J. Nov. 30, 2017) ......................................................... 15

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ......................................................................................... 15

*Boyle v. United States*,
  556 U.S. 938 (2009) ......................................................................................... 16

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) ......................................................................................... 26

*Crete v. Resort Condos. Int'l, LLC*,
  2011 WL 666039 (D.N.J. Feb. 14, 2011) ........................................................... 18

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
  784 F. Supp. 2d 508 (D.N.J. 2011) ......................................................... 10, 12, 26

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ............................................................................. 20

*Hale v. Stryker Orthopaedics*,
   2009 WL 321579 (D.N.J. Feb. 9, 2009) ................................................................ 20, 24

*Health Care Serv. Corp. v. Olivares*,
   2011 WL 4591913 (E.D. Tex. Sept. 2, 2011) ........................................................ 13

*Hemi Group, LLC v. City of New York*,
   559 U.S. 14-15 (2010) .......................................................................................... 12

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ................................................................................ 21

*Hlista v. Safeguard Props., LLC*,
   649 F. App'x 217 (3d Cir. 2016) .......................................................................... 26

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) .............................................................................................. 11

*Hughes v. Consol-Pennsylvania Coal Co.*,
   945 F.2d 594 (3d Cir. 1991) ................................................................................. 19

*In re Avandia Marketing, Sales Practices & Product Liability Litig.*,
   804 F.3d 633 (3d Cir. 2015) ................................................................................. 10

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ............................................................................. 18, 25

*In re Insulin Pricing Litig.*,
   2019 WL 643709 (D.N.J. Feb. 15, 2019) ............................................................ 12

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ................................................................................. 2

*In re Party City Sec. Litig.*,
   147 F. Supp. 2d 282 (D.N.J. 2001) ...................................................................... 23

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ................................................................................... 9

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated
   Pretrial Proceedings*,
   159 F. Supp. 3d 898 (N.D. Ill. 2016) ................................................................... 22

*In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017) ....................................................... 14, 24

iv

*In re Yasmin & Yaz (Drospirenone) Mkt., Sales Practices and Prod. Liab.*
  *Litig.*,
    2010 WL 3119499 (S.D. Ill. Aug. 4, 2010) .......................................................... 13

*Institutional Inv'r. Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)................................................................................. 22

*Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*,
    2016 WL 7013468 ................................................................................................ 20

*Kolar v. Preferred Real Estate Invs., Inc.*,
    361 F. App'x 354 (3d Cir. 2010) ............................................................................ 9

*Lightning Lube v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)................................................................................... 26

*Livingston v. Shore Slurry Seal, Inc.*,
    98 F. Supp. 2d 594 (D.N.J. 2000) ....................................................................... 23

*Longmont United Hosp. v. Saint Barnabas Corp.*,
    2007 WL 1850881 (D.N.J. June 26, 2007) .......................................................... 12

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004)................................................................... 15, 19, 20

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000)................................................................................. 10

*McCullough v. Zimmer, Inc.*,
    382 F. App'x 225 (3d Cir. 2010) .......................................................................... 18

*Mega Concrete, Inc. v. Smith*,
    2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ...................................................... 16

*Metz v. United Counties Bancorp*,
    61 F. Supp. 2d 364 (D.N.J. 1999) ....................................................................... 15

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir.2011).................................................................................. 15

*Morales v. Superior Living Prod., LLC*,
    398 F. App'x 812 (3d Cir. 2010) ............................................................................ 9

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
    200 F.2d 911 (5th Cir. 1952) ............................................................................... 26

*New England Carpenters Health & Welfare Fund v. Abbott Labs.*,
    2014 WL 4783833 (N.D. Ill. Sept. 25, 2014) ...................................................... 17

*Paramount Enters., Inc. v. Laborers E. Region Org. Fund*,
   2014 WL 791825 (D.N.J. Feb. 25, 2014) ................................................. 20, 21, 27

*Parness v. Christie*,
   2015 WL 4997430 (D.N.J. Aug. 19, 2015) ........................................................ 13

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ............................................................................ 17

*Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*,
   2014 WL 1047946 (W.D. Wash. Mar. 14, 2014) .............................................. 14

*Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck &
   Co., Inc.*,
   2014 WL 12621229 (D.N.J. June 30, 2014) ...................................................... 20

*R and O Pharmacy, LLC v. Valeant Pharmaceuticals North America LLC*,
   No. 2:15-cv-07846 (C.D. Cal. 2015) ................................................................... 5

*Rolo v. City Investing Co. Liquidating Tr.*,
   155 F.3d 644 (3d Cir. 1998) .............................................................................. 20

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ................................................................................. 9

*Rothberg v. Marger*,
   2013 WL 1314699 (D.N.J. Mar. 28, 2013) .......................................................... 9

*Senior v. Page*,
   2011 WL 995942 (D.N.J. Mar. 16, 2011) .......................................................... 27

*Shearin v. E.F. Hutton Group, Inc.*,
   885 F.2d 1162 (3d Cir. 1989) ............................................................................ 26

*Sidney Hillman Health Ctr. v. Abbott Labs. & Abbvie Inc.*,
   192 F. Supp. 3d 963 (N.D. Ill. 2016) ................................................................. 13

*Sundholm v. eSuites Hotels LLC*,
   2014 WL 5449975 (D.N.J. Oct. 27, 2014) ......................................................... 14

*Tierney &Partners, Inc. v. Rockman*,
   274 F. Supp. 2d 693 (E.D. Pa. 2003) ................................................................. 21

*United States v. Hedaithy*,
   392 F.3d 580 (3d Cir. 2001) .............................................................................. 19

*United States v. Tanner*,
   No. 17-cr-61 (S.D.N.Y. May 22, 2018) ..................................................... 7, 16, 17

*Valcom, Inc. v. Vellardita*,
    2014 WL 1628431 (D.N.J. Apr. 23, 2014) ........................................................ 17

*Warden v. McLelland*,
    288 F.3d 105 (3d Cir. 2002) ........................................................................... 19

*Zavala v. Wal-Mart Stores, Inc.*,
    447 F. Supp. 2d 379 (D.N.J. 2006) .................................................................. 11

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................... 15

18 U.S.C. § 1341 ................................................................................................. 19

18 U.S.C. § 1343 ................................................................................................. 19

18 U.S.C. § 1952(b) ................................................................................. 19, 20, 24

18 U.S.C. § 1961(5) ............................................................................................. 19

18 U.S.C. § 1962(d) ............................................................................................. 25

18 U.S.C. § 1964(c) ............................................................................................. 13

**Rules**

17 C.F.R. § 240.10b–5 ......................................................................................... 15

Fed. R. Civ. P. 9(b) .............................................................................................. 9

**Other Authorities**

Gregory P. Joseph, Civil RICO: A Definitive Guide 109 (4th ed. 2015) ................... 16

H.R. Conf. Rep. No. 104-369 (1995) ..................................................................... 13

Valeant Pharmaceuticals International, Inc. ("Valeant", n/k/a Bausch Health Companies Inc.) submits this memorandum of law in support of its motion to dismiss the Amended Consolidated Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated employee benefit plans who say they purchased Valeant products and now seek a windfall by repackaging allegations made in the Valeant securities fraud suits as Racketeer Influenced and Corrupt Organizations Act ("RICO") claims.  But Plaintiffs do not allege that they were the targets of any purported misstatement; they do not specify a single instance when they received a falsified prescription, or a reimbursement request for a refill a patient did not want, or made under a false pharmacy identification number. Accordingly, Plaintiffs lack standing.

Even if Plaintiffs had standing, repackaged securities law allegations do not, as a matter of law, state a viable RICO claim.  Nor do allegations of "price gouging," since it is well-settled that tough business practices do not establish a cause of action under RICO, and the RICO statute itself bars attempts to transform commercial disputes into a federal claim for treble damages.

Plaintiffs do not allege that Valeant's price increases broke any law.  Plaintiffs claim instead that certain employees of the independent mail-order pharmacy Philidor engaged in deceptive business practices.  It is essential to their case, therefore, that Plaintiffs hold Valeant liable for Philidor's conduct.  To do so, the Amended Complaint alleges that Valeant, Philidor, Philidor's CEO Andrew Davenport, and another former Philidor executive, Matthew Davenport, constituted a criminal "enterprise" under RICO.[1]  Although the Amended Complaint references

---

[1] Valeant, with Philidor Rx Services, LLC ("Philidor"), Andrew Davenport and Matthew Davenport, are collectively referred to herein as "Defendants."

Andrew Davenport's recent federal conviction, it neglects to mention the basis of the conviction was **defrauding Valeant**.  This critical fact is irreconcilable with Plaintiffs' case.

Lastly, there is, of course, no conspiracy claim in the absence of a viable RICO claim, but the Amended Complaint also fails to properly plead conspiracy because there are no specific allegations addressing the period or object of the conspiracy, or the actions taken to achieve that purpose.

## BACKGROUND

### I.    PLAINTIFFS' ALLEGATIONS

Over several years, Valeant repeatedly touted its innovative new business model.  Am. Compl. ¶ 2.[2]  Rather than incurring the substantial expense and risk of new drug research, Valeant told the market that it would purchase the rights to promising products from other companies and improve the drugs' profitability.  *Id*.  One way, among others, Valeant would accomplish this was by raising the list price of certain drugs it believed were being sold at artificially low prices.  *See id*. ¶ 3.  Plaintiffs allege that Valeant also worked with a specialty, mail-order pharmacy Philidor in order to promote Valeant's brand-name drugs instead of generics to doctors and patients.  *Id*. ¶ 6.  In September 2015, following news reports about price increases of certain specialty drugs, Congress and government regulators pursued investigations into drug-pricing practices by drug manufacturers including Valeant.  *Id*. ¶ 233.  The next month, media outlets reported allegations of deceptive sales practices by Philidor employees.  Ex. 1.[3]  Valeant thereafter severed its relationship with Philidor.  Am. Compl. ¶¶ 24, 226.

---

[2] This background is drawn from the allegations in the Amended Complaint, which are accepted as true for purposes of this motion only, and from other documents properly considered on a motion to dismiss.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1322–23, 1331 (3d Cir. 2002).

[3] "Ex. __" refers to Exhibits to the August 28, 2019 Declaration of Richard Hernandez.

Plaintiffs are New York, Texas and California employee benefit funds.  *Id.* ¶¶ 34-38.  On behalf of themselves and a putative class of "all other similarly situated third party payors ('TPPs')," they claim that from January 2, 2013 through November 9, 2015 (the "Class Period"), *id.* ¶ 257, subsidiaries of Philidor were part of a "secret network of captive pharmacies" that permitted Valeant to charge higher prices.  *Id.* ¶ 1.  Copying allegations made in other litigations — including the Valeant securities class action — and publicly available reports about rising drug costs, the Amended Complaint alleges that a so-called "Valeant Enterprise" violated RICO by committing mail and wire fraud.

### A.     The Alleged Misstatements Constituting Fraud

In order to support their allegations of mail and wire fraud, Plaintiffs rely on second- or third-hand misstatements — not statements made directly to Plaintiffs.  *Id.* ¶¶ 153-194.

### 1.     Alleged Concealment of a "Secret Network" of Pharmacies

To support the claim that Valeant created a "Secret Network of Captive Pharmacies," *id.* ¶¶ 67-68, the Amended Complaint alleges that Valeant worked with Philidor to promote Valeant's drugs.  *Id.* ¶ 6.  Plaintiffs claim that Philidor, in turn, had subsidiaries variously described as "captive" or "phantom" pharmacies, with little explanation of what those terms mean or how they are allegedly fraudulent.[4]  *Id.* ¶ 115.

It is central to the Amended Complaint that Valeant and Philidor supposedly kept their commercial relationship "secret."  *See id.* ¶ 11.  But beginning in January 2013, Valeant publicly disclosed that it was developing a new "alternative fulfillment" distribution channel ("AF") through which specialty pharmacies filled certain dermatological prescriptions directly for

---

[4] Plaintiffs make much of the fact that, like Philidor, these subsidiaries appear to be named according to a chess theme, *id.* ¶ 116, but do not explain how this allegation demonstrates that Defendants were attempting to conceal the relationship between Philidor and the subsidiaries.

patients.  *See, e.g.,* Ex. 2 at 8.  On January 4, 2013, then-CEO J. Michael Pearson explained how the AF program could allow the "average price internally to go up" for sales by, among other things, obtaining higher reimbursement rates from pharmacy-led efforts "to actually try to get [insurance] claim[s] adjudicated" with payors.  *Id.* at 7, 13.

Plaintiffs do not allege that Valeant or Philidor had any legal obligation to disclose the specifics of their commercial relationship to the Class or anyone else.  Instead, Plaintiffs vaguely assert that Valeant somehow concealed its relationship with Philidor by "consistently downplay[ing] the extent to which pricing increases contributed to the Company's growth."  Am. Compl. ¶ 63.  The Amended Complaint never explains why Valeant would "conceal" something it had no obligation to disclose and, more importantly, Valeant repeatedly disclosed that growth in the Developed Markets "was driven primarily by price" in its Form 10-Q and Form 10-K filings during the Class Period.  *See, e.g.*, Ex. 3 at 42; Exs. 4-13.

## 2. Alleged Submission by Philidor Employees of Misleading Prescription-Payment Claims

The Amended Complaint alleges that ***Philidor*** employees submitted prescription-payment claims to TPPs containing various misrepresentations, including that doctors had ordered the prescriptions to be filled with brand-name drugs, not generics, or containing "false pharmacy-identification information."  Am. Compl. ¶¶ 154, 157.  These general allegations are largely based on news reports purporting to quote anonymous former Philidor employees.  *Id.* ¶¶ 155, 158.  These second-hand reports do not identify the employees, nor do Plaintiffs allege that they or their counsel ever spoke with these employees.  Exs. 1, 14, 15.  The *Bloomberg* article that Plaintiffs rely on heavily, for example, purports to paraphrase a Philidor employee manual regarding a process for resubmitting rejected pharmaceutical prescriptions.  Ex. 1; Am. Compl. ¶ 158.  Plaintiffs do not quote or cite the manual itself or append it to their Amended Complaint.

Plaintiffs also allege that Philidor "instructed" its employees, when submitting claims to TPPs, to reduce the price of Valeant drugs to levels that unspecified insurers were willing to pay, and to likewise reduce the size of prescription orders to levels that insurers would cover. *Id.* ¶¶ 191-193. The Amended Complaint does not specify any related false statement made to any TPP — let alone any statement made by Valeant.

### 3. Alleged Shipments by Philidor of Unrequested Prescription Refills

Plaintiffs allege that ***Philidor*** employees shipped refills to patients that the patients did not request, thereby implicitly "falsely representing to TPPs and their PBM agents that patients had requested renewals of their prescriptions." *Id.* ¶ 165. Plaintiffs rely on a January 13, 2016 *New York* magazine article for this proposition, which is, in turn, primarily based on allegations made by Russel Reitz, who was a litigation adversary to Valeant in a dispute over unpaid invoices. Ex. 16. Reitz is quoted in the article as claiming that his pharmacy was wrongfully billed for sales of Valeant's drugs, which, according to him, were partly attributable to a fraudulent automatic refill program created by Valeant and Philidor. *Id.* Neither the Amended Complaint nor the article quoting Reitz, provides names, dates or other specifics about any alleged misstatements.[5] Nor is such detail provided in either the anonymous consumer complaint or the anonymous internet post Plaintiffs cite. Am. Compl. ¶¶ 188-189; Exs. 17-18.

### 4. Alleged Co-Pay Waivers

Plaintiffs allege that Defendants committed mail or wire fraud by "routinely" waiving co-pays for patients so they could receive Valeant medications with no out-of-pocket cost. Am.

---

[5] Reitz's pharmacy disputed the invoices in California federal court. *R and O Pharmacy, LLC v. Valeant Pharmaceuticals North America LLC*, No. 2:15-cv-07846 (C.D. Cal. 2015). R&O's Complaint sought declaratory relief, but did not bring a fraud claim. *Id.* (Dkt. No. 1). Valeant subsequently filed a counterclaim asserting its rights to payments for the invoices. *Id.* (Dkt. No. 16). Soon thereafter, R&O decided to settle the matter for an undisclosed sum. *Id.* (Dkt. No. 37).

Compl. ¶¶ 169-187.  Plaintiffs suggest that their own rules prohibit these practices.  But even if true, the internal rules of private entities do not carry the weight of law.  To support these allegations, Plaintiffs cite Congressional testimony by Mark Merritt, President and CEO of the Pharmaceutical Care Management Association, a trade group representing pharmacy benefit managers (which work with TPPs to reduce costs).  *Id.*  But Merritt's testimony did not concern Valeant — it was the general opinion of a paid lobbyist for pharmacy benefit managers.  Ex. 19; Ex. 20 at 7-9, 22, 40-42.

Plaintiffs also claim that Defendants made false statements to "doctors and patients," promising patients Valeant drugs at no cost as long as their prescriptions were submitted to Philidor.  Am. Compl. ¶ 188.  To support this claim, Plaintiffs cite anonymous complaints by customers claiming that ***Philidor*** billed their insurers despite assurances that the customers' co-pays were waived.  *Id.*

### B.    The Alleged Conspiracy

The Amended Complaint alleges that Valeant and Philidor conspired to sell more of Valeant's products at higher prices.  *Id.* ¶ 278.  The Amended Complaint generically alleges that either Defendants, or one of 15 other listed entities, or perhaps another, unnamed "agent" of Defendants, made false or misleading statements of some kind in furtherance of the conspiracy. *Id.* ¶ 277.  No facts of any kind are alleged to show that Valeant agreed to participate in a conspiracy to commit fraud, as opposed to a commercial agreement between a manufacturer and distributor designed to increase sales.

### C.    Andrew Davenport's Conviction for Defrauding Valeant

Although the Amended Complaint mentions Andrew Davenport's conviction, *id.* ¶¶ 113, 120, it neglects to acknowledge the basis of that conviction, namely that Davenport and Gary Tanner ("Tanner"), a former Valeant employee, were convicted of ***defrauding Valeant*** for the

benefit of Philidor and themselves.  As explained in the indictment, Davenport "agreed to kick back to [Tanner] . . . a portion of the proceeds [Davenport] expected to receive from an eventual sale of Philidor to Valeant."  Ex. 21 (Superseding Indictment) ¶ 7.  That kickback scheme was "contrary to Valeant's interests."  *Id.*  On May 22, 2018, a jury convicted Andrew Davenport and Tanner on four counts of:  (1) Conspiracy to Commit Honest Services Wire Fraud; (2) Honest Services Wire Fraud; (3) Conspiracy to Violate the Travel Act; and (4) Conspiracy to Commit Money Laundering.  *United States v. Tanner*, No. 17-cr-61 (S.D.N.Y. May 22, 2018) (Dkt. No. 140); *see also* Am. Compl.  ¶¶  113, 120.  As the trial court concluded: "***Valeant is the victim of Defendants' scheme.***"  Ex. 22 (Restitution Order) at 17 (emphasis added).

### D.   Plaintiffs' Purported Standing to Sue

Plaintiffs do not allege that any misrepresentation was made to them.  Plaintiffs allege an indirect theory of harm, contending that they overpaid for prescriptions because the alleged misconduct caused an overall inflation in the price of Valeant's drugs.  Am. Compl. ¶ 256.  They assert that using Philidor to distribute drugs allowed Valeant to increase prices, even though Valeant announced that it was part of its business model to raise prices.  Plaintiffs' claim that Philidor allowed Valeant to raise prices is undercut by the Amended Complaint's acknowledgement that while Philidor focused on distributing Valeant's dermatological drugs, *id.* ¶¶ 8, 70, Valeant also allegedly increased the prices of other drugs not distributed by Philidor.  *Id* ¶ 3.

## II.   COURT'S GRANT OF A STAY TO STREAMLINE ISSUES

On June 24, 2016, a consolidated amended securities class action complaint was filed against Valeant, making claims based on the same core facts alleged here, including Valeant's alleged use of a concealed network of "captive" pharmacies related to Philidor and misrepresentations regarding drug prices.  *See In re Valeant Pharmaceuticals Int'l, Inc. Sec.*

*Litig.*, No. 15-cv-7658, Dkt. No. 80.  On December 14, 2016, Plaintiffs filed a consolidated class action for a purported class consisting of TPPs that bought Valeant's drugs through Philidor.  *In re Valeant Pharmaceuticals Int'l, Inc. Third Party Payor Litig.*, No. 16-cv-3087, Dkt. No. 27. On February 13, 2017, Valeant moved to dismiss Plaintiffs' complaint.  Dkt. No. 38.

On August 9, 2017, the Court granted Andrew Davenport and Philidor's motion to stay this case pending resolution of Davenport's criminal proceedings, thereby terminating the pending motions to dismiss.  Dkt. No. 73.  The Court observed that there was "substantial overlap" between Andrew Davenport's criminal proceeding and the current action, reasoning that "the criminal proceeding alleges that Andrew Davenport . . . acted against the interests of Valeant, and the civil proceeding alleges that Defendants acted together against the interests of the third-party payors."  Dkt. No. 73, at 7, 4.  In granting the stay, ***the Court held that the "resolution of the criminal case will moot, clarify, or otherwise affect various contentions in the civil case.***"  Dkt No. 73, at 7 (emphasis added).

Davenport was convicted on May 22, 2018.  On September 20, 2018, the plaintiffs in the securities class action amended their complaint.  *See In re Valeant*, Dkt. No. 352 (the "Securities Complaint").  On April 12, 2019, this Court lifted the stay in this action and Plaintiffs filed their Amended Complaint on July 30, 2019.  Dkt Nos. 119, 143.  Plaintiffs' amendments repeatedly cite and quote from — often verbatim — the Securities Complaint filed against Valeant.[6]

---

[6] Plaintiffs contend that the September 20, 2018 Securities Complaint "includes numerous factual allegations based on discovery in that action that provide further support" for their allegations.  Pls.' Mot. for Leave to Amend, Dkt. No. 130-1, at 10.  This is incorrect.  Each of Plaintiffs' amendments citing the 2018 Securities Complaint (*see, e.g.*, Am. Compl. ¶¶ 75, 173-176, 191, 210-218) were already alleged verbatim in the June 24, 2016 securities consolidated complaint, which were not based on any discovery in that action.

## ARGUMENT

To state a claim under RICO, a plaintiff must allege harm **to itself** that was proximately caused by the alleged RICO violations. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). In addition, RICO claims that are predicated on acts of fraud are subject to the strict pleading standard of Fed. R. Civ. P. 9(b). *See Morales v. Superior Living Prod., LLC*, 398 F. App'x 812 (3d Cir. 2010); *Rose v. Bartle*, 871 F.2d 331, 356 n.33 (3d Cir. 1989). Rule 9(b) requires claims based on fraud to "state with particularity the circumstances constituting the fraud." *See* Fed. R. Civ. P. 9(b). At a minimum, plaintiffs must support their allegations of fraud "with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002), *overruled on other grounds by Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). These demanding standards are especially appropriate for RICO claims because of the "relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010). In light of that risk, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013).

## I.    PLAINTIFFS DO NOT HAVE STANDING TO BRING THIS SUIT

Plaintiffs lack standing because they have not alleged that they suffered any harm proximately caused by the alleged RICO violations. *Anza*, 547 U.S. at 453.

### A.    Plaintiffs Do Not Allege a Direct Injury

A plaintiff's standing to sue under RICO is limited to only those circumstances where the "alleged RICO violation was the proximate cause of the plaintiff's injury." *Id*. The "central question" this Court must ask is whether Defendants' conduct led directly to Plaintiffs' injuries.

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508 (D.N.J. 2011) (citing

*Anza*, 547 U.S. at 461). Plaintiffs dodge this question throughout the Amended Complaint, and

in the process fail "to make two related but analytically distinct threshold showings": (1) that

they "suffered an injury" to ***their*** "business or property," and (2) that, to the extent they were

injured, it was "proximately caused by [Defendants'] violation of 18 U.S.C. § 1962." *Maio v.*

*Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Plaintiffs do not allege a single instance in which any Defendant — let alone Valeant —

made a false statement to them. Among other things, ***Plaintiffs do not specify a single instance***

***when they received a falsified prescription, a reimbursement request for a refill a patient did***

***not request, a reimbursement request under a false pharmacy identification number, or any of***

***the other allegedly deceptive tactics.*** Consequently, Plaintiffs do not allege any instance when

***they*** paid for or reimbursed a prescription as a result of fraud. *See* Am. Compl. ¶ 256. Instead,

Plaintiffs impermissibly fall back on allegations about acts affecting "Plaintiffs and the Class"

generally. *Id.*

Plaintiffs have previously relied on *In re Avandia Marketing, Sales Practices & Product*

*Liability Litig.* 804 F.3d 633 (3d Cir. 2015) as the basis for their theory of standing. There, TPPs

alleged that defendants fraudulently concealed safety risks associated with a drug (Avandia), and

that concealment of those safety risks caused TPPs to pay for those drugs more frequently and at

higher prices. In *Avandia*, the product itself was the subject of false statements. Here,

***individual sales*** were allegedly procured through Philidor's fraudulent conduct. This is a

significant distinction. The *Avandia* plaintiffs were harmed because, due to the concealment of

safety risks, the drug itself was overprescribed and overpriced. *See id.* at 645. Here, there is not

one instance alleged where any Plaintiff paid for a sale procured by fraud. Moreover, while the

*Avandia* plaintiffs each alleged that they paid for Avandia, Plaintiffs here do not identify a single

instance where they paid for any specific Valeant drug.  Instead, drawing on newspaper articles describing Philidor's business practices, Plaintiffs claim that they *must* have been damaged. This is pure speculation.

Furthermore, Plaintiffs' theory that but-for Valeant's relationship with Philidor, Valeant could not have increased prices is belied by the Amended Complaint itself.  Plaintiffs allege that Philidor focused on Valeant's dermatological products.  Am. Compl. ¶¶ 8, 70.  But the Amended Complaint admits that Valeant increased the prices of non-dermatological products not sold by Philidor.  *Id.* ¶ 3 ("Valeant also acquired the blood clotting agent Mephyton from Aton and increased the price of the drug 527% between the third quarter of 2014 and the fourth quarter of 2015.").  Indeed, the Amended Complaint alleges that Valeant's "[m]ost egregious[]" price increase was for Glumetza, a diabetes drug, which was *not* sold by Philidor.  *Id.*

## B.    Plaintiffs' Theory of Indirect Harm Is Too Attenuated to Support a Finding of Proximate Causation

Even if the Amended Complaint offered more than general, conclusory allegations, Plaintiffs' alleged harm is too attenuated to support causation.  Under Supreme Court precedent, "but for" causation does not establish RICO standing.  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 385 (D.N.J. 2006), *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012).  Instead, a RICO plaintiff must show that the defendants' acts proximately caused its injuries.  *Holmes*, 503 U.S. at 268. There is no basis for this Court to ever determine whether and to what extent Plaintiffs' allegedly increased reimbursement costs are attributable to Defendants' alleged practices.  This is particularly true with respect to Plaintiffs' theory that while they were not the target of any misrepresentations (and they did not, for example, pay for a brand-name drug that was not ordered), the misconduct somehow indirectly raised prices for drugs.  *See* Am. Compl. ¶¶ 48-51.

Indeed, because Plaintiffs have failed to identify a single fraudulent reimbursed claim, any calculation of damages would be "arduous, complex and would lead to speculation." *Longmont United Hosp. v. Saint Barnabas Corp.*, 2007 WL 1850881, at *8 (D.N.J. June 26, 2007) (Cavanaugh, J.) (granting defendant's motion to dismiss, holding that plaintiffs had not adequately established proximate cause).

### C. The Independent Acts of Third Parties Separate the Alleged Fraud from the Asserted Injury

Where a RICO plaintiff's "theory of liability rests on the independent actions of third and even fourth parties," and "[m]ultiple steps separate the alleged fraud from the asserted injury," the causal chain is too attenuated to support a RICO claim. *Hemi Group, LLC v. City of New York*, 559 U.S. 14-15 (2010). Here, there are multiple steps in the distribution, sale, and payment chain between the sale of a prescription drug by a manufacturer to a pharmacy and a patient's eventual reimbursement by TPPs. Am. Compl. ¶¶ 43-47.

In addition to "middlemen," like pharmacy benefit managers, "third and [] fourth parties" such as pharmacies, doctors and patients, each with independent agency, are essential parts of the causal chain. *See Hemi Group*, 559 U.S. at 15. The complex process that culminates with reimbursement by TPPs has led multiple courts, in this jurisdiction and others, to find the causal chain too attenuated to confer RICO standing to TPPs. *See, e.g.*, *In re Insulin Pricing Litig.*, 2019 WL 643709, at *12-13 (D.N.J. Feb. 15, 2019) (barring plaintiffs' RICO claim because plaintiffs' "contentions that they suffered direct injury as a result of Defendants' artificially inflated [Average Wholesale Prices]" "failed to plead any direct purchase between themselves and Defendants"); *Dist. 1199P Health & Welfare Plan*, 2008 WL 5413105, at *9 (court had "a substantial question as to whether Plaintiffs could ever properly plead proximate causation . . . or if the independent and individualized decision-making of physicians prescribing Risperdal

breaks any chain of causation between Defendants' alleged misconduct and Plaintiffs' payment for the medication"); *see also Sidney Hillman Health Ctr. v. Abbott Labs. & Abbvie Inc.*, 192 F. Supp. 3d 963, 971 (N.D. Ill. 2016); *Health Care Serv. Corp. v. Olivares*, 2011 WL 4591913 (E.D. Tex. Sept. 2, 2011); *In re Yasmin & Yaz (Drospirenone) Mkt., Sales Practices and Prod. Liab. Litig.*, 2010 WL 3119499, at *7 (S.D. Ill. Aug. 4, 2010). Here "the link between [Defendants' conduct] and [Plaintiffs'] alleged injury is too remote . . . [and] indirect . . . to establish proximate cause." *Parness v. Christie*, 2015 WL 4997430, at *7 (D.N.J. Aug. 19, 2015).

## II.     PLAINTIFFS DO NOT ASSERT A VIABLE PREDICATE ACT

Even if Plaintiffs had standing, they have not asserted a viable predicate act. Instead, Plaintiffs attempt to recast securities fraud claims into a RICO action to access enhanced RICO remedies such as treble damages or attorneys' fees. Plaintiffs' amendments prove their reliance on the securities fraud action — they cite it more than 35 times.

### A.     Securities Fraud Cannot Serve as a RICO Predicate Act

The Private Securities Litigation Reform Act ("PSLRA") amended federal law to state that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [federal RICO laws]." 18 U.S.C. § 1964(c). This amendment was intended not only "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. No. 104-369, at 47 (1995); *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999).

13

**B.    Plaintiffs' Amendments Underscore that the Alleged Conduct Sounds in Securities Fraud**

The Amended Complaint tracks the securities class allegations verbatim. *Compare, e.g.*, Am. Compl. ¶¶ 64, 75, 81, 97, 100, 111, 139, 164, 176-184, 160, 191-196 *with* Sec. Compl. ¶¶ 201, 99, 101, 447, 138, 416, 123, 177, 82-90, 125, 127-128. The Amended Complaint alleges that the "Valeant Enterprise" made "materially false and misleading" misrepresentations to investors (a) during conference calls (Am. Compl. ¶¶ 246, 56); (b) in press releases (*id.* ¶ 62); (c) on quarterly earnings calls (*id.* ¶¶ 63-64, 221); (d) in presentations (*id.* ¶¶ 178-79); and (e) in audit statements (*id.* ¶256). The alleged misrepresentations involve Valeant's Alternative Fulfillment program, how price contributed to Valeant's growth, the expected returns on investments on orphan drugs, and Valeant's accounting for Philidor. *Id.* This is the essence of the securities fraud action. Plaintiffs' core allegation concerns the exact same conduct that this Court already held constitutes a valid allegation of securities fraud (at least at the motion to dismiss phase): that Valeant kept its relationship with Philidor "secret" in order to inflate the price of Valeant's drugs. *Compare, e.g.* Am. Compl. ¶¶ 58-86 *with In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *3 (D.N.J. Apr. 28, 2017) ("To facilitate its price gouging strategy, Valeant 'created a secret network of specialty pharmacies' that would raise the prices of Valeant's products while avoiding scrutiny.")*; see Sundholm v. eSuites Hotels LLC*, 2014 WL 5449975, at *8 (D.N.J. Oct. 27, 2014) (mail and wire fraud that "grew out of the underlying securities fraud" could not constitute predicate acts for a civil RICO claim).

As the Court knows, "Plaintiff[s] may not rely on such conduct to support its RICO claim." *See Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, 2014 WL 1047946, at *9 (W.D. Wash. Mar. 14, 2014) (barring RICO claim under § 107 of the PSLRA where plaintiffs

alleged defendants made "material misrepresentations" to investors in in-person meetings and through brochures and letters mailed to investors); *see also Birdsall v. Rivera*, 2017 WL 5951620, at *4 (D.N.J. Nov. 30, 2017) (holding that mail and wire fraud undertaken in connection with "allegations of violations of securities law" cannot support a civil RICO claim).[7]

Plaintiffs cannot argue that only "some" conduct amounts to securities fraud, but "other" conduct constitutes wire or mail fraud. *See Bald Eagle*, 189 F.3d at 329. This is because Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, are directed at fraud "***in connection with*** the purchase or sale" of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975) (emphasis added). The Third Circuit has explained that "conduct undertaken to keep a securities fraud . . . scheme alive is conduct undertaken in connection with the purchase and sale of securities." *Bald Eagle*, 189 F.3d at 330.

## III.    PLAINTIFFS HAVE NOT PLED THE ELEMENTS OF RICO

To state a claim under RICO, a civil plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004).

---

[7] It is irrelevant whether the plaintiff filing the RICO action possesses standing to sue for securities fraud. If anyone, including the Securities and Exchange Commission, may sue the defendant for securities fraud, then the conduct is "actionable" within the meaning of § 1964(c). *Bald Eagle*, 189 F.3d at 329-330; *MLSMK Inv. Co. v. JP Morgan Chase & Co*., 651 F.3d 268, 277 (2d Cir.2011). On this point, *Metz v. United Counties Bancorp* is instructive. There, the Court granted defendants' motion to dismiss, finding that the employees' allegations concerning defendants' misrepresentations regarding their benefits plans constituted actionable securities fraud and could not serve as a predicate act under RICO. 61 F. Supp. 2d 364, 368, 371 (D.N.J. 1999). It did not matter, for purposes of RICO, that the employees did not own any of the defendants' stock. *See id*. at 375. Similarly, here, Plaintiffs allege they overpaid for their members' benefits due to Defendants' misrepresentations.

### A.      Plaintiffs Have Not Alleged the Existence of a RICO "Enterprise"

As the Court foresaw in granting the stay, *the "resolution of the criminal case will moot,*

*clarify, or otherwise affect various contentions in the civil case*."  Dkt No. 73, at 7 (emphasis

added).  Valeant cannot plausibly be alleged to be a member of a racketeering enterprise with

Philidor and the Davenports now that a final judgment establishes that Philidor — through its

CEO Andrew Davenport — conspired ***against*** Valeant.

### 1.      Andrew Davenport's Conviction for Defrauding Valeant Precludes the Argument that Valeant and Davenport Formed an Enterprise

The Supreme Court has held that a RICO association-in-fact enterprise must have a

"structure," meaning it must have: 1) a common purpose; 2) relationships among the enterprise's

members; and 3) sufficient longevity for said members to pursue the common purpose.  *Boyle v.*

*United States*, 556 U.S. 938, 946 (2009).  The "relationships" prong is not satisfied if the actors

were acting independently or their relationships were affirmatively antagonistic.  *See Mega*

*Concrete, Inc. v. Smith*, 2011 WL 1103831, *10 (E.D. Pa. Mar. 24, 2011) ("Although the term

'relationship' is broad, it cannot be satisfied where the members were acting entirely

independently."); *see also* Gregory P. Joseph, Civil RICO: A Definitive Guide at 109 (4th ed.

2015).  Davenport's criminal conviction for defrauding Valeant destroys Plaintiffs' contention

that Valeant and Davenport were working together.

The indictment on which Davenport was convicted describes his kickback scheme as

"secret" from Valeant and "contrary to Valeant's interests."  Ex. 21 (Superseding Indictment)

(Dkt. No. 66 ¶ 7, 13) *United States v. Tanner*, No. 17-cr-00061 (S.D.N.Y. Aug. 30, 2017).  In

ordering Andrew Davenport to pay Valeant restitution, the judge overseeing the trial found as a

matter of law that Valeant was the "victim" of Davenport's fraud.  Ex. 22 (Restitution Order) at

17.  Such conduct does not satisfy RICO's enterprise element.  *See Valcom, Inc. v. Vellardita*,

2014 WL 1628431, at *6-7 (D.N.J. Apr. 23, 2014) (finding that members' actions taken "to benefit themselves" and not to benefit other members of the supposed enterprise, even where those independent actions are fraudulent, do not establish an enterprise); *see also New England Carpenters Health & Welfare Fund v. Abbott Labs.*, 2014 WL 4783833, at *5 (N.D. Ill. Sept. 25, 2014) ("[T]he actions, communications, and conduct at issue must be undertaken on behalf of the enterprise as opposed to on behalf of the alleged enterprise members in their individual capacities, to advance their individual self-interests.").

Testimony from Davenport's criminal trial also contradicts Plaintiffs' allegation that Valeant and Philidor collectively used aliases to ensure secrecy (*see* Am. Compl. ¶ 8). Testimony at trial showed that Gary Tanner used aliases to ensure ***Valeant*** was unaware of Davenport and Tanner's deceptive tactics at Philidor.  *See* Ex. 23 *United States v. Tanner* Trial Transcript at 786:8-787:11 (Testimony of Valeant Senior Vice President for Business Development Andrew Davis); Ex. 23 at 804:18-807:16 (Testimony of Valeant Senior Vice President for Human Resources Kelly Webber); Ex. 25 at 1215:12-1216:13 (Testimony of Tanner's supervisor Laizer Kornwasser).[8]  And, critically, the testimony at the trial specifically established that Davenport thwarted the attempts of high-level Valeant executives to diversify ***away from*** Philidor and use other unrelated specialty pharmacies.  Ex. 24 at 950:22-956:4, 970:10-976:22 (Testimony of Kornwasser).

---

[8] The superseding indictment and trial transcript may be considered on this motion.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (courts may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  Plaintiffs cannot dispute that their claims are based, in part, on the trial transcript since they cite the transcript more than 50 times in their Amended Complaint.

###### 2. Plaintiffs Fail to Explain How the "Valeant Enterprise" Exerted Control over its Members

Plaintiffs must also demonstrate the enterprise had "some mechanism for controlling and directing the affairs of the group on an on-going, rather than ad hoc, basis." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 365 (3d Cir. 2010). "Simply listing a string of individuals or entities," as Plaintiffs do (*see* Am. Compl. ¶ 266), "without more, is insufficient to allege the existence of a RICO enterprise." *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d Cir. 2010).

Plaintiffs suggest that Valeant controlled Philidor because of "Philidor's financial dependence on Valeant for sales of Valeant products." Am. Compl. ¶ 77. The Amended Complaint asserts that Philidor relied "on Valeant management and personnel to operate its business." *Id*. Plaintiffs thus "plead[] only 'the existence of a business relationship' between a defendant and a party with whom the defendant [purportedly] formed an enterprise," but not an actionable RICO enterprise. *See Crete v. Resort Condos. Int'l, LLC*, 2011 WL 666039, at *9–11 (D.N.J. Feb. 14, 2011). Plaintiffs' conclusory allegations and "generic language" fails to show how the "Valeant Enterprise" exerted control over its members. *Id*. at *10 (finding that plaintiffs' "general allegations as to [defendants'] *role* in the enterprise . . . provided little information with respect to the *management and control* that [defendants] took *individually* with respect to the enterprise."). Plaintiffs assert that because some Philidor officers were employees of BQ6, a marketing firm that provided unspecified consulting services for Valeant, Valeant must have controlled the officers. Am. Compl. ¶ 69. *Crete* rejected such a theory. 2011 WL 666039, at *10 (allegations that a company provided "marketing, support, and direction" for a different company accused of fraud were insufficient where plaintiffs failed "to identify . . . any *specific instructions given*" to the fraudsters). Plaintiffs also point to Gary Tanner's supervision

of Philidor operations.  Am. Compl. ¶¶ 79, 82-83.  But "supervision" of a distributor is not

"control" over a RICO enterprise.  And, like Andrew Davenport, Tanner was convicted for

conspiring to *deceive Valeant management* regarding Philidor.  *See* Ex. 21 (Superseding

Indictment).

Finally, the Purchase Option Agreement executed in December 2014, whereby Valeant

obtained the rights to purchase Philidor in the future, occurred more than two years *after* the

enterprise was allegedly formed.  *See* Am. Compl. ¶ 77.  This agreement demonstrates the lack

of Valeant's "control" over the enterprise:  if Valeant already "controlled" Philidor, why would it

pay $100 million for an option to purchase it?

### B.    Plaintiffs Have Not Alleged a Pattern of Racketeering Activity

A "pattern of racketeering activity" requires at least two predicate acts of racketeering

that have sufficient continuity and relationship.  *Hughes v. Consol-Pennsylvania Coal Co.*, 945

F.2d 594, 609-611 (3d Cir. 1991); *Lum*, 361 F.3d at 223 (citing 18 U.S.C. § 1961(5)); *Absolute

Power Sys., Inc. v. Cummins, Inc.*, 2016 WL 6897782, at *4 (D.N.J. Nov. 23, 2016) (citing

*Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002)).  The alleged predicate acts identified

by Plaintiffs are indictable under 18 U.S.C. § 1341 (mail or email fraud), § 1343 (wire fraud),

and § 1952 (the "Travel Act"), based on alleged "false and misleading statements."  Am. Compl.

¶ 269.  Mail and wire fraud require: (1) the defendant's knowing and willful participation in a

scheme and artifice to defraud; (2) with the specific intent to defraud; and (3) the use of the mails

or interstate wire communications in furtherance of the scheme.  *United States v. Hedaithy,* 392

F.3d 580, 590 (3d Cir. 2001).  The Travel Act prohibits the use of any interstate facility with the

intent to: "(1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence

to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or

facilitate the promotion of . . . any unlawful activity."  *Hale v. Stryker Orthopaedics*, 2009 WL

321579, at *5 n.6 (D.N.J. Feb. 9, 2009).  Section 1952(b) defines "unlawful activity" as:
gambling, extortion, bribery, arson, money laundering, or a failure to comply with financial
reporting requirements.  18 U.S.C. § 1952(b).

### 1. Plaintiffs Fail to Allege Mail or Wire Fraud With Particularity

The Amended Complaint recites a number of allegedly false statements, but makes no
effort to allege the time, place and contents of the alleged misrepresentations, or the identity of
persons to whom or by whom the alleged misrepresentations were made, *see, e.g.*, Am. Compl.
¶¶ 9, 10, 18, 153-169, 173, 188-189, 191-193, 245-247, 249-251, 256, as they must to plead mail
or wire fraud.  *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("[P]laintiff must
plead or allege the 'date, time and place of the alleged fraud or otherwise inject precision or
some measure of substantiation into a fraud allegation.'").

The Amended Complaint suffers from a number of general, pervasive defects.  It does not
allege that any representation was made to a named plaintiff.  *See Lum*, 361 F.3d at 225–26; *see
also Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998); *Paramount
Enters., Inc. v. Laborers E. Region Org. Fund,* 2014 WL 791825, at *4 (D.N.J. Feb. 25, 2014)
(Shipp, J.)  (RICO allegations dismissed where "Plaintiff's allegations are vague as to whom
these representations were sent").  It pleads only that unspecified "Defendants" engaged in
certain conduct, or cites conduct of Philidor, of which Valeant cannot be liable.  In failing to
distinguish between Valeant and the other Defendants, Plaintiffs fail to put Valeant on notice of
the claims against it.  *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 2016 WL 7013468 at
*15 (Shipp, J.) ("Plaintiff fails to provide any notice to Defendants as to the precise
misrepresentations or omissions that were calculated to deceive another or how they were
connected to a fraudulent scheme."); *Plumbers & Pipefitters Local 572 Health & Welfare Fund
v. Merck & Co., Inc.*, 2014 WL 12621229, at *4 (D.N.J. June 30, 2014) (Shipp, J.) ("Under Rule

9(b), fraud pleadings must provide the defendant precise notice of the misconduct alleged."). The Amended Complaint fails to specify whether the alleged misrepresentations were transmitted through mail or wire. *Tierney &Partners, Inc. v. Rockman*, 274 F. Supp. 2d 693, 698 (E.D. Pa. 2003). Plaintiffs must explain "***how*** the misrepresentations were disseminated," and that such allegations are "essential for Plaintiffs to sustain a §1962(c) violation based on . . . mail and wire fraud." *Paramount Enters.*, 2014 WL 791825, at *4 (emphasis added).

Beyond these general deficiencies, each category of purported misrepresentations lacks the essential detail necessary to plead fraud.

***Creation of a "secret" network of pharmacies*** (Am. Compl. ¶¶ 67-123): As to the alleged creation of a "Secret Network of Captive Pharmacies," Plaintiffs allege no misstatements at all, let alone any misstatements by Valeant. Despite Plaintiffs' attempt to equate "secret" with "illegal" or "fraudulent," the Amended Complaint cites no principle of law that would have required Valeant to reveal more about its business relationship with Philidor.

***Alteration of prescriptions*** (Am. Compl. ¶¶ 154-156): Plaintiffs contend that "Defendants instructed Philidor" to "deliberately alter" doctors' instructions regarding whether a prescription may be filled with generic rather than brand-name medication. *Id.* ¶ 154. But Plaintiffs fail to specify who gave this instruction, or when it occurred. Nor do Plaintiffs allege a single specific instance where a prescription was altered. Instead, they merely allege that when TPPs denied reimbursement claims for Valeant's drugs, unnamed "***Philidor employees***" would "routinely" overcome the denials by resubmitting claims suggesting that the doctors wanted the prescriptions "Dispensed as Written." *Id.* ¶ 155.[9] Allegations that misrepresentations occur

---

[9] Courts look critically at allegations made by anonymous and confidential sources in support of fraud allegations. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756–57 (7th Cir. 2007) ("[I]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [a court] could take account of plausible opposing inferences. Perhaps these confidential sources

"routinely" or "regularly" are inadequate. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 921–22 (N.D. Ill. 2016) (allegation failed under Rule 9(b) where plaintiffs merely alleged defendants met with TPPs "regularly").  So too are references to misrepresentations by unspecified "employees" or agents, without further detail.  *Alcman Servs. Corp. v. Joseph A. Cairone, Inc.*, 1992 WL 50097, at *3 (E.D. Pa. Mar. 10, 1992).

*Falsified pharmacy identification information* (Am. Compl. ¶¶ 157-164): Plaintiffs allege that "Defendants" "used false pharmacy identification information [NPIs]" to bypass denials of reimbursement claims, *id.* ¶ 157, but cannot identify a single instance in which this occurred.  The Amended Complaint refers to "maps and detailed instructions," for Philidor employees to use false NPIs, *id.* ¶ 158, but does not allege a single instance when the instructions were followed, when, or by whom.  Plaintiffs' reference to a separate commercial dispute in California federal court, *R&O Pharmacy, LLC v. Valeant Pharmaceuticals North America LLC*, fails to cure these deficiencies, since no filing in that litigation provides such details.  *See id.* ¶ 163.

*Submission of unrequested or false prescription renewals* (Am. Compl. ¶¶ 165-168): Plaintiffs suggest that Defendants somehow "caused Philidor" to automatically refill prescriptions, even when the refills had not been requested by patients, but the Amended

---

have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist."); *see Institutional Inv'r Group v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009).  Here, usually relying on press reports, Plaintiffs reference various anonymous second- or third-hand statements from alleged former employees without providing the bases for their knowledge, establishing their reliability, or offering any other corroboration.

Complaint specifically pleads only that *Philidor* employees engaged in these practices.  *Id.* ¶ 165.[10]

   ***Waived co-pays*** (Am. Compl. ¶¶ 169-187):  The alleged practice of "routinely" waiving patient co-pays does not amount to a misrepresentation.  *Id.* ¶ 169; *Livingston v. Shore Slurry Seal, Inc.,* 98 F. Supp. 2d 594, 597 (D.N.J. 2000) (observing that mail or wire fraud "must involve some sort of fraudulent misrepresentation or omission").  The Amended Complaint asserts the conclusion that "Defendants falsely represented to TPPs that the patient had been charged the full prices for the drugs," but offers no supporting facts.  Am. Compl. ¶ 173.  Plaintiffs refer to an article in *The Pharmacist Activist* about one patient who "***probably*** would not have needed or ordered the refills if he would have been charged a co-pay."  *Id.* ¶ 185.  But the article makes clear that the unnamed patient, who is not alleged to be a member of any Plaintiff group, acknowledges that ***he*** ordered the refills, contradicting the claim of unrequested refills, and speculation about what a single unnamed patient "probably" would have done has no pleading value.

   ***Directed Patients to Philidor*** (Am. Compl. ¶¶ 188-190): Plaintiffs allege that Defendants "disseminated false statements . . . to doctors and patients," promising patients Valeant drugs at no cost as long as their prescriptions were submitted to Philidor.  *Id.* ¶ 188.  Plaintiffs do not describe the content of these "false statements," only that some were in "brochures and coupons" and Plaintiffs do not even allege who created those documents. *Id.* ¶ 250.  There is no allegation that any of these patients were Plaintiffs' members, or that these prescriptions were reimbursed

---

[10] The apparent source of this claim, a *New York* magazine article, fails to identify who submitted the fraudulent refills, when they were submitted, or to whom.  This Court discounts articles used as a basis for fraud allegations that do not provide sufficient details to support those accusations. *See, e.g.*, *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 307-309 (D.N.J. 2001).

by Plaintiffs.  In any event, the anonymous complaints make clear that ***Philidor*** billed the insurance companies.  *Id.* ¶¶ 188-189.

***Price and Volume Adjustments*** (Am. Compl. ¶¶ 191-194):  According to Plaintiffs, ***Philidor*** also "instructed" employees to reduce the price and volume of Valeant prescriptions to levels that unspecified insurers (who are not alleged to be any of the Plaintiffs) were willing to cover.  *Id.* ¶¶ 191, 192.  Plaintiffs fail to allege how any of this conduct constitutes fraud or a false statement, let alone cite the content, date, place, or speaker.  Plaintiffs' claim that such practices violate the terms of PBM contracts (*id.* ¶¶ 195-196) is irrelevant, since Valeant is not alleged to be a party to these contracts.[11]

### 2.    Plaintiffs' Reliance On The Travel Act Is Similarly Unavailing

Plaintiffs lump together the wire fraud, mail fraud, and Travel Act statutes and contend that all three were violated by the issuance of the same "false and misleading statements."  Am. Compl. ¶ 270.  As discussed above, Plaintiffs have not alleged any actionable misstatements. Additionally, even a properly-pled fraud claim does not constitute a Travel Act violation. Plaintiffs must allege the use of an interstate facility with the intent to: "(1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion of . . . any unlawful activity," such as gambling, extortion, bribery, arson, money laundering, or a failure to comply with financial reporting requirements.  *Hale*, 2009 WL 321579, at *5 n.6; 18 U.S.C. § 1952(b).  None of these activities is alleged.

---

[11] Valeant understands that the Court determined scienter was adequately pleaded in *In re Valeant*, 2017 WL 1658822, but nevertheless believes scienter is lacking.  For the same reasons, Plaintiffs fail to establish that Valeant had the requisite fraudulent intent to commit the RICO violations.  Valeant reserves its rights, but, for the sake of efficiency, does not repeat those arguments here.

### C.     Plaintiffs' Claims Are, At Most, Repackaged Breach of Contract or Tortious Interference with Contract Claims, Not RICO Claims

The Amended Complaint alleges several times that unspecified Defendants "blatantly breach[ed]" or "flouted" contractual "requirements mandating generic substitution" for brand-name drugs like Valeant's.  Am. Compl. ¶¶ 5, 8, 51, 67.  But the Amended Complaint does not allege that any named plaintiff was a party to any such contract, and breach of contract does not qualify as 'racketeering activity' under RICO.  *Annulli v. Panikkar*, 200 F.3d 189, 192 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000).

> [I]f garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole. ***Virtually every litigant would have the incentive to file their breach of contract and tort claims under the federal civil RICO Act, as treble damages and attorney's fees would be in sight***. We will not read language into § 1961 to federalize every state tort, contract, and criminal law action.

*Id.* at 200 (emphasis added).[12]

## IV.    PLAINTIFFS' CONSPIRACY CLAIM FAILS

### A.     A Conspiracy Claim Cannot Be Sustained Absent a Viable RICO Claim

Without a viable RICO claim, the conspiracy claim also falls.  To state a claim under § 1962(d), a plaintiff must allege the existence of an agreement to participate in an "endeavor which, if completed, would satisfy all the elements" of the RICO statute.  *In re Ins. Brokerage*, 618 F.3d at 373.  RICO conspiracy claims should be dismissed where "the pleadings do not state a substantive RICO claim."  *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 222 (3d Cir.

---

[12] For similar reasons, Plaintiffs may not use RICO to enforce state laws and regulations that do not otherwise confer a private right of action.  Plaintiffs try to ground their RICO claims on allegations that certain Defendants — not Valeant — made false statements to state regulators. *See, e.g.*, Am. Compl. ¶¶ 11, 62, 137, 251-255.  Plaintiffs' reliance on these alleged misrepresentations fails because no member of the Class was the target.

2016); *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that conspiracy claims "necessarily must fail if the substantive claims [under § 1962] are themselves deficient").

### B.     Plaintiffs' Allegations Demonstrate a Commercial Relationship

To survive a motion to dismiss, Plaintiffs must allege "the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).  Simply making "conclusory allegations of concerted action" devoid of facts actually "reflect[ing] joint action" is inadequate.  *Adams v. Teamsters Local 115*, 214 F. App'x 167, 175 (3d Cir. 2007).

Plaintiffs allege nothing more than a commercial relationship between a drug manufacturer and a pharmacy that sold Valeant's products to customers.  *See* Am. Compl. ¶¶ 77, 81.  Alleging that Valeant employees were "secretly embedded in Philidor" and used Philidor email addresses with aliases, for example, does not show an agreement to commit mail and wire fraud.  *Id.* ¶¶ 17, 86.  Even if the Amended Complaint pled that Valeant knew of a scheme (it does not), "mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy."  *Abbot Labs. V. Adelphia Supply USA*, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017).[13]

---

[13] Plaintiffs allege incorrectly that Valeant owned Philidor, but if true, there could be no conspiracy.  "[A] parent corporation cannot conspire with its wholly owned subsidiary to violate § 1962(d) of RICO because the two entities always have a 'unity of purpose or a common design.'" *Dist. 1199P Health & Welfare Plan*, 2008 WL 5413105, at *15 (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984)).  The law of conspiracy requires "two persons or entities" because "[a] corporation cannot conspire with itself any more than a private individual can."  *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952).

## CONCLUSION

For the reasons above, this Court should dismiss Plaintiffs' Amended Consolidated Class

Action Complaint with prejudice.[14]


Dated: August 28, 2019

Respectfully submitted,

/s/ Richard Hernandez
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (admitted *pro hac vice*)
Craig S. Waldman (admitted *pro hac vice*)
Dean McGee (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Valeant Pharmaceuticals
International, Inc.*

---

[14] Given that Plaintiffs have already amended, there is no reason to believe that Plaintiffs would fare any better upon further amendment, so leave to amend should be denied as futile. *See Senior v. Page*, 2011 WL 995942, at *5 (D.N.J. Mar. 16, 2011).  At minimum, given the lack of specificity needed to evaluate the elements of their claims, there is good cause to require Plaintiffs to file a RICO Case Statement pursuant to Local Civil Rule 16.1(b)(4) with any amendment.  *See Paramount Enters.*, 2014 WL 791825, at *5.