# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. THIRD-PARTY PAYOR LITIGATION | Civil Action No. 3:16-cv-3087-MAS-LHG |
| | District Judge Michael A. Shipp |
| | Magistrate Judge Lois H. Goodman |
| | Special Master Dennis M. Cavanaugh, U.S.D.J. Ret. |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTIONS FOR (I) PRELIMINARY APPROVAL OF SETTLEMENTS AND (II) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Hannah Ross
James A. Harrod
Jai K. Chandrasekhar
James E. Fee
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1400

*Lead Counsel, Interim Class Counsel, and Counsel for Plaintiffs AirConditioning and Refrigeration Industry Health and Welfare Trust Fund, Fire and Police Health Care Fund, San Antonio, and Plumbers Local Union No. 1 Welfare Fund*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 2

BACKGROUND OF THE LITIGATION ...................................................................... 4

LEGAL ARGUMENT .................................................................................................... 6

I.  THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL ............... 6

   A.  The Standards For Preliminary Approval ......................................................... 6

   B.  The Settlements Are The Result Of Good-Faith, Arm's-Length Negotiations
       Conducted By Well-Informed And Experienced Counsel ............................................ 8

       1.  The Valeant Settlement ........................................................................... 8

       2.  The Philidor Defendants Settlement ....................................................... 9

       3.  The Settlements Are Products of Well-Informed Parties and Counsel .................. 9

   C.  The Substantial Benefits For The Settlement Class, Weighed Against Litigation
       Risks, Support Preliminary Approval ........................................................... 11

II.  CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
     PURPOSES IS APPROPRIATE .......................................................................... 14

   A.  The Settlement Class Satisfies The Requirements Of Rule 23(a) ............................. 15

       1.  The Settlement Class Members Are Too Numerous To Be Joined ...................... 15

       2.  There Are Common Questions Of Law And Fact ................................................. 15

       3.  Plaintiffs' Claims Are Typical Of Those Of The Settlement Class...................... 16

       4.  Plaintiffs Will Fairly And Adequately Protect The Interests Of The
           Settlement Class ........................................................................................ 17

   B.  The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)........................... 18

       1.  Common Legal And Factual Questions Predominate............................................ 18

       2.  A Class Action Is Superior To Other Methods Of Adjudication.......................... 19

III.  NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ........................... 19

IV.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ..................................................... 21

CONCLUSION........................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Alves v. Main*,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012) ........................................................9, 10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................14, 15, 18

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994).....................................................................................16

*In re DVI Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008)..........................................................................17

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)..................................................................................6

*Georgine v. Amchem Prods. Inc.*,
    83 F.3d 610 (3d Cir. 1996) ..................................................................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)....................................................................................6

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012).........................................................................15, 16

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014)............................................................................7

*In re Ocean Power Techs., Inc.*,
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...........................................................9

*Pozzi v. Smith*,
    952 F. Supp. 218 (E.D. Pa. 1997) .......................................................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).........................................................................16, 20

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
    2012 WL 4482032 (D.N.J. Sept. 25, 2012) ........................................................16

*Szczubelek v. Cendant Mortg. Corp.*,
    215 F.R.D. 107 (D.N.J. 2003)..............................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................................................6

**Statutes & Rules**

Fed. R. Civ. P. 23 ..............................................................................................3, 4, 20

Fed. R. Civ. P. 23(a) ........................................................................................14, 15, 16

Fed. R. Civ. P. 23(b)(3)..............................................................................13, 14, 18, 19

Fed. R. Civ. P.  23(e) ..............................................................................................6, 7

Plaintiffs AirConditioning and Refrigeration Industry Health and Welfare Trust Fund, Fire and Police Health Care Fund, San Antonio, Plumbers Local Union No. 1 Welfare Fund, New York Hotel Trades Council & Hotel Association of New York City, Inc. Health Benefits Fund, and the Detectives Endowment Association of New York City (collectively, "Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below), have reached two proposed settlements that will, if approved, resolve this Action in its entirety. Specifically, Plaintiffs have reached settlements (i) with Defendant Valeant Pharmaceuticals International, Inc. ("Valeant") for $23,000,000 in cash (the "Valeant Settlement"), and (ii) with Defendants Philidor Rx Services, LLC ("Philidor"), Andrew Davenport ("Davenport"), and the Estate of Matthew S. Davenport ("Estate" and, collectively with Davenport and Philidor, the "Philidor Defendants") for $125,000 in cash (the "Philidor Defendants Settlement") (together with the Valeant Settlement, the "Settlements").[1]

Plaintiffs respectfully submit this brief in support of their unopposed motions for entry of two separate orders—an Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") with respect to each of the two Settlements. Each of the Preliminary Approval Orders, which have been submitted with Plaintiffs' motions, will (i) preliminarily approve the relevant Settlement; (ii) certify the Settlement Class and appoint Plaintiffs as class representatives and appoint Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as Class Counsel, solely for settlement purposes; (iii) approve the form and manner of providing

---

[1] All capitalized terms that are not otherwise defined in this brief have the meanings provided in the Stipulation and Agreement of Settlement with Valeant Pharmaceuticals International, Inc., dated August 4, 2021 (the "Valeant Stipulation") or the Stipulation and Agreement of Settlement with the Philidor Defendants, dated August 4, 2021 (the "Philidor Defendants Stipulation").

notice of the Settlements to the Settlement Class; and (iv) schedule a hearing at which the Court will consider final approval of the Settlements, approval of the proposed Plan of Allocation, and Class Counsels' motion for an award of attorneys' fees and Litigation Expenses.

## PRELIMINARY STATEMENT

Plaintiffs have reached two settlement agreements with Defendants to settle this Action in exchange for total cash payments of $23,125,000 for the benefit of the Settlement Class. If approved by the Court, the Settlements will dismiss and release all claims asserted against Defendants and resolve the Action.

Plaintiffs and Class Counsel believe that the proposed Settlements represent a significant benefit to the Settlement Class, particularly in the light of the significant risks that further litigation might result in no recovery or a smaller recovery. Plaintiffs and Class Counsel recognize that this Action would present a substantial number of risks in establishing Defendants' liability before a factfinder, including new confounding evidence that could rebut core aspects of Plaintiffs' liability and damages case. In light of these risks, Plaintiffs and Class Counsel believe that the proposed Settlements are fair, reasonable, and adequate, and in the best interests of the Settlement Class.

The Settlement was reached only after extensive litigation beginning in 2016, which included the filing of two consolidated complaints, the second of which was filed after an eighteen-month stay during the pendency of a criminal trial against Defendant Andrew Davenport; motion practice regarding Defendant Davenport's motion to stay; motion practice regarding the Court's appointment of a Special Master; Plaintiffs' successful opposition to Defendants' second round of motions to dismiss, after the first round of motions to dismiss was mooted by the litigation stay; and extensive discovery, including review and analysis of more than 8.6 million pages of documents produced to Plaintiffs by Defendants and third parties, successful opposition to the Philidor Defendants' motion to quash a document subpoena, participation in 39 depositions that

were coordinated with the Valeant securities actions and required multiple two-day depositions. Plaintiffs' Counsel also worked extensively with an expert on damages. Accordingly, at the time Plaintiffs agreed to the Settlements, Plaintiffs and Plaintiffs' Counsel had a well-developed understanding of the strengths and weaknesses of the class's claims in the Action.

In addition, the Settlement between Plaintiffs and Valeant was reached only after two mediation sessions before an experienced mediator from JAMS, which involved extensive arm's-length settlement negotiations between experienced counsel and extensive discussion between counsel for the Parties regarding Plaintiffs' damages model. This process culminated in the proposed settlement with Valeant. The Settlement between Plaintiffs and the Philidor Defendants was reached after arm's-length negotiations between these Parties' experienced counsel, independent of the JAMS-facilitated process between Plaintiffs and Valeant.

At the proposed final-approval hearing (the "Settlement Hearing"), the Court will have before it more detailed motion papers submitted in support of the proposed Settlements, and will be asked to determine whether the Settlements are fair, reasonable, and adequate. At this time, Plaintiffs request only that the Court grant preliminary approval of the Settlements, which will begin the process of considering the proposed Settlements by authorizing notice to be sent to potential members of the Settlement Class. Specifically, Plaintiffs request that the Court enter the proposed Preliminary Approval Order for each Settlement, which, among other things, will:

    (i)      preliminarily approve the terms of each Settlement;

   (ii)     approve the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2, and 3 to each Preliminary Approval Order;

  (iii)     find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form provided in the Preliminary Approval Orders constitute the best notice practicable under the circumstances, and comply with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable laws and rules; and

(iv)     schedule the Settlement Hearing and establish a schedule and procedures for Plaintiffs' disseminating the Notice and Claim Form and publishing the Summary Notice; potential Settlement Class members' requesting exclusion from the Settlement Class or objecting to the Settlements, the proposed Plan of Allocation, or Class Counsel's motion for attorneys' fees and Litigation Expenses; and the Parties' submitting papers in support of final approval of the Settlements.

Plaintiffs also request certification of the Settlement Class, appointment of Plaintiffs as class representatives, and appointment of BLB&G and Carella Byrne as Class Counsel, for purposes of settlement only, under Rule 23.

## <u>BACKGROUND OF THE LITIGATION</u>

This Action asserts fraud and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of Plaintiffs and a class of other third-party payors ("TPPs") that paid for their beneficiaries' prescriptions for drugs manufactured by Valeant and distributed by Philidor (or one of the pharmacies it controlled) from January 2, 2013 through November 9, 2015 (the "Class Period"). Davenport was the founder and CEO of Philidor, a now-defunct pharmacy.

The Action arises from Defendants' alleged fraudulent conspiracy to dispense Valeant's branded medications through Philidor and its network of pharmacies.  Plaintiffs further alleged that Philidor and its network pharmacies were secretly controlled by Valeant. By concealing the relationships between Valeant, Philidor, and the other pharmacies, Defendants allegedly prevented TPPs and their pharmacy benefit managers ("PBMs") from realizing that numerous prescriptions for expensive Valeant drugs were all coming from pharmacies controlled directly or indirectly by Valeant. Plaintiffs alleged that many of the Valeant drugs had less expensive generic equivalents or near equivalents, so if the TPPs and PBMs had realized that the prescriptions were all coming from one Valeant-controlled pharmacy network, they would have refused to pay for the branded drugs and would have insisted on substitution of the less expensive generics or other substitutes.

When the relationships between Valeant, Philidor, and the network of other pharmacies were publicly revealed in late 2015, major national PBMs immediately stopped doing business with Philidor; Philidor ceased operations; and numerous Congressional and regulatory investigations, as well as private lawsuits, followed.

This action was first filed in May 2016 (ECF No. 1), with the Consolidated Class Action Complaint and Demand for Jury Trial (the "Complaint") subsequently filed in December 2016 (ECF No. 27). Defendants moved to dismiss the Complaint in February 2017 (ECF Nos. 38, 42, 43), but before the motion was decided, the Philidor Defendants moved in March 2017 to stay the Action pending the resolution of criminal charges against Davenport, who had been charged with federal offenses for paying a kickback to a Valeant executive and his co-defendant, Gary Tanner. ECF Nos. 55, 56. Over Plaintiffs' opposition (ECF No. 59), the Court granted the Philidor Defendants' motion to stay in August 2017 (ECF No. 74).

Following Davenport's criminal conviction in May 2018, the stay was lifted in April 2019 (ECF No. 119). Plaintiffs filed the Amended Complaint in July 2019 (ECF No. 143), incorporating evidence from the criminal trial that supported Plaintiffs' claims. The Parties then engaged in a second round of motion-to-dismiss briefing (ECF Nos. 144-46), including Plaintiffs' omnibus opposition to three motions to dismiss (ECF No. 149), with the motions fully briefed in October 2019 (ECF Nos. 150-52). In the meantime, in September 2019, the Hon. Michael A. Shipp referred those motions and all pretrial proceedings in this Action to Special Master Hon. Dennis M. Cavanaugh, USDJ (Ret.). ECF No. 147.

In August 2020, Judge Cavanaugh issued a Report & Recommendation ("R&R") granting in part and denying in part Defendants' motions to dismiss. ECF No. 167. Valeant filed a timely objection to the Special Master's R&R (ECF No. 174), which Plaintiffs opposed (ECF No. 177).[2]

The Parties conducted discovery beginning in late 2019, and over the course of the litigation Plaintiffs received over 8.6 million pages of documents from Defendants and third parties, participated in 39 depositions, and engaged a damages expert to assist with preparations for class certification.

## LEGAL ARGUMENT

### I.    THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL

#### A.    The Standards For Preliminary Approval

The settlement of class-action litigation is favored. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class actions. Approval of a class-action settlement involves a two-step process. *First*, the Court performs a preliminary review of the terms of a proposed settlement to determine

---

[2] The Philidor Defendants also filed an objection through a letter to the Court in September 2020 (ECF No. 178), which Plaintiffs opposed through their own letter in October 2020 (ECF No. 179).

whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under amendments to Rule 23(e) that became effective in December 2018, a court should grant preliminary approval upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law that provided that courts should grant preliminary approval after considering whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (citation omitted).

In considering *final* approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] Because these factors are satisfied here, final approval of the Settlement and certification of the Settlement Class are both "likely," and preliminary approval is merited.

---

[3] In connection with final approval, the Court will also be asked to consider the Third Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the

*(Cont'd)*

Plaintiffs respectfully request that the Court take the first step in the settlement-approval process and grant preliminary approval of the Settlements so that notice of the Settlements can be given to the Settlement Class. As summarized below, and as will be discussed in detail in a subsequent motion for final approval of the Settlements, the Settlements are the product of arm's-length negotiations after substantial discovery, and provide a significant benefit to the Settlement Class in light of the risks of litigation. Thus, Plaintiffs respectfully submit that the Settlements satisfy the requirements for preliminary approval.

### B. The Settlements Are The Result Of Good-Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

Here, the Settlements are the product of extensive, arm's-length negotiations between well-informed and experienced counsel, and, in case of the Valeant Settlement, with the assistance of an experienced mediator. After the Parties had conducted substantial document discovery and completed more than three dozen depositions, Plaintiffs began separate negotiations with Valeant and the Philidor Defendants.

### 1. The Valeant Settlement

In early 2021, Plaintiffs and Valeant agreed to engage in private mediation in an attempt to resolve the Action and selected Jed D. Melnick, Esq. of JAMS to act as mediator. The Parties participated in two in-person mediation sessions before Mr. Melnick in April 2021 and June 2021.

---

risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Courts of Appeals).

At both sessions, the Parties engaged extensively with the mediator regarding the merits of Plaintiffs' liability and damages claims and Valeant's defenses. After the conclusion of the June 2021 mediation session, the Parties reached an agreement in principle to settle the litigation for $23,000,000.

The extensive settlement negotiations, their arm's-length nature, and the involvement of an experienced mediator strongly support the conclusion that the Valeant Settlement was achieved free of collusion and merits preliminary approval. *See In re Ocean Power Techs., Inc*., 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (the "participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties") (citation omitted); *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) (same).

### 2.     The Philidor Defendants Settlement

In June 2021, Plaintiffs and the Philidor Defendants held a Zoom meeting to discuss potential resolution of the litigation. Following this initial meeting, counsel for Plaintiffs and the Philidor Defendants continued to engage in arm's-length negotiations to reach a satisfactory settlement figure. After several rounds of negotiations, Plaintiffs and the Philidor Defendants reached an agreement to settle the litigation as to the Philidor Defendants for $125,000. Final approval of the Valeant Settlement is a condition for the Philidor Defendants Settlement to become effective. *See* Philidor Defendants Stipulation ¶ 32(f).

### 3.     The Settlements Are Products of Well-Informed Parties and Counsel

In addition to conducting good-faith negotiations to reach the Settlements, the Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before reaching the agreement to settle. Among other things, Plaintiffs' Counsel had (i) conducted an extensive investigation of the claims and worked extensively with an expert on damages;

(ii) fully briefed Defendants' motions to dismiss twice and ultimately substantially defeated those motions; (iii) engaged in extensive discovery, which included obtaining more than 8.6 million pages of documents, serving and responding to interrogatories, conducting numerous meet and confers, exchanging numerous letters, successfully opposing the Philidor Defendants' motion to quash Plaintiffs' document subpoena to two law firms that advised these Defendants on establishing their network of controlled pharmacies, and participating in 39 depositions; and (iv) participated in a mediation process that provided a thorough understanding of Valeant's arguments on liability and damages. As a result, Plaintiffs and their counsel had a sound basis for assessing the strengths and weaknesses of the claims and defenses in the Action at the time the Settlements were reached.

Plaintiffs participated actively in the Action by overseeing its prosecution and producing their own documents, as well as consulting with Plaintiffs' Counsel throughout the case and during the mediation process. As TPPs, Plaintiffs are experienced fiduciaries with respect to their members and beneficiaries and are therefore particularly well-qualified to act as fiduciaries for the other Settlement Class members. The judgment of Plaintiffs and Class Counsel that the Settlements are in the best interests of the Settlement Class should be given substantial weight. *See Alves*, 2012 WL 6043272, at \*22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.").

Given that both Settlements are the product of arm's-length negotiations, have been approved by sophisticated Plaintiffs, and were entered into by experienced and informed counsel, preliminary approval is warranted.

**C.**    **The Substantial Benefits For The Settlement Class,
Weighed Against Litigation Risks, Support Preliminary Approval**

The proposed Settlements create a total settlement amount of $23,125,000 in cash. As will be explained in greater detail in advance of the Settlement Hearing, this recovery provides a substantial benefit to the Settlement Class in light of the risks posed by continued litigation.

While Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that this Action presents a number of significant risks to establishing both liability and damages. First, it is possible that evidence developed by Plaintiffs through discovery might not be found to support Plaintiffs' liability case. For example, while Plaintiffs had alleged (based on media reports quoting former Philidor employees) that Valeant and Philidor engaged in wide-scale alterations of prescriptions to avoid generic substitution, the evidentiary record documents in support of the theory that Philidor employees altered doctors' prescriptions was mixed. In their depositions, several Valeant and Philidor employees have denied this occurred. Other evidence, including evidence concerning the role of Valeant's salesforce in generating Valeant prescriptions and the lack of generic equivalents for several Valeant drugs distributed through Philidor, could also have made it challenging for Plaintiffs to establish their theory of liability in order overcome summary judgment or succeed at trial.

In addition, several issues threatened to substantially limit the range of possible damages that could be established for the class at trial, including evidence showing that a substantial percentage of the Valeant drugs filled through Philidor were not "covered" by TPPs in their reimbursement process (and thus did not result in damages to class members). In addition, Defendants' arguments with respect to Valeant drugs that lacked generic equivalents were strongest with respect to two drugs that constituted roughly half the Valeant sales through Philidor.

Thus, Defendants' success on that issue might have substantially lowered any potential damages for the class.

In addition, continuing the litigation would have required Plaintiffs to overcome numerous challenges to class certification and even if a class was certified by the District Court, Defendants would likely have made an application under Fed. R. Civ. P. 23(f) for an interlocutory appeal, which Plaintiffs would have to also prevail at. Defendants would contend that liability could not be proven on a class-wide basis because of individualized differences among class members, based on arguably distinct arrangements between TPPs and their PBMs, and PBMs' different policies and procedures. In addition, Defendants would likely argue that individualized issues of proximate cause preclude class certification. There was some support in discovery for the contention that the main method of driving prescriptions of Valeant drugs through Philidor was by Valeant's deployment of its own salesforce to encourage doctors to write prescriptions for Valeant-branded drugs and route them through Philidor. Those prescriptions were reimbursed only if they conformed to each specific PBM's requirements. Thus, Defendants would argue that for each prescription, whether Defendants' alleged fraud resulted in a fraud-induced cost to TPPs is an individualized question and cannot be resolved on a common, class-wide basis.

Furthermore, in order to succeed, Plaintiffs would have to prevail at several more stages in the litigation, including over Defendants' expected summary judgment and *Daubert* motions. Assuming Plaintiffs prevailed on those, Plaintiffs would have to prevail on the appeals of those rulings to Judge Shipp and the Third Circuit that would likely follow. Then Plaintiffs would have to prevail at trial, and in the inevitable post-trial appeals.  At each of these stages, there were significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation would result in a higher recovery, or any recovery at all.

With respect to the Philidor Defendants, in addition to all of the same risks related to achieving class certification and establishing liability and damages discussed above, Plaintiffs also faced extremely significant ability-to-pay concerns. Philidor is a defunct entity; Matthew Davenport is deceased, and his Estate has limited assets; and Andrew Davenport is subject to a multi-million dollar forfeiture order as a result of his criminal conviction. Accordingly, the prospect of obtaining any significantly larger recovery from the Philidor Defendants was remote, if not impossible, and this further supports the reasonableness of the Philidor Defendants Settlement.

The Settlements are also reasonable in light of the maximum damages that could be reasonably established at trial. With respect to damages, the Parties did not agree on the methodology to determine, assumptions to be used, or amount. Plaintiffs' damages expert conducted a number of different models to estimate damages based on certain assumptions about the amounts TPPs spent on reimbursement of Valeant drugs fulfilled through Philidor. The most refined of the models produce an estimate that the maximum reasonably recoverable damages range from $169 million to $242 million. The range depends on whether liability could be established for drugs without an FDA-approved generic equivalent, and might be substantially lower (likely under $100 million) once information on TPP reimbursement levels is considered. The Settlements represent a recovery of 9.6% to 23.1% of the estimated potential damages, which Plaintiffs' Counsel believe is highly favorable in light of the substantial risks of establishing liability here. Notably, Plaintiffs expected Defendants to contend that the Settlement Class had *no* cognizable damages.

In the context of all of these significant litigation risks, weighed against the immediacy and amount of the $23,125,000 recovery for the Settlement Class, Plaintiffs and Class Counsel believe

that the Settlements are a very favorable result, and are fair, reasonable, adequate, and in the best

interests of the Settlement Class.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS
## <u>FOR SETTLEMENT PURPOSES IS APPROPRIATE</u>

In granting preliminary approval, the Court should also certify the Settlement Class for

purposes of the Settlements under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

The proposed Settlement Class, which has been stipulated to by the Settling Parties, consists of:

> all health insurance companies, health maintenance organizations, self-funded
> health and welfare benefit plans, other Third-Party Payors, and any other health
> benefit provider in the United States of America or its territories, that paid or
> incurred costs for Valeant's branded drug products in connection with a claim
> submitted by Philidor, a claim submitted by any pharmacy in which Philidor had a
> direct or indirect ownership interest, or a claim by any pharmacy for which the
> amount sought for reimbursement was alleged to be inflated as a result of
> Defendants' allegedly fraudulent scheme, during the Class Period, and allegedly
> suffered damages thereby.

Valeant Stipulation ¶ 1(rr); Philidor Defendants Stipulation ¶ 1(ss). Excluded from the Settlement

Class are Pharmacy Benefit Managers, Defendants, Defendants' successors and assigns, and any

entity in which any Defendant has or had a controlling interest. *See id*. Also excluded from the

Settlement Class are any persons and entities who or which exclude themselves by submitting a

request for exclusion that is accepted by the Court. *See id*.

Courts have long acknowledged the propriety of certifying a class for purposes of a class

action settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *see

also Pozzi v. Smith*, 952 F. Supp. 218, 221 (E.D. Pa. 1997) ("The Third Circuit has declared that

class actions created for the purpose of settlement are recognized under the general scheme of

Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements

under the Rule."). A settlement class, like other certified classes, must satisfy all the requirements

of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See*

*Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested[.]"). As demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate because the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

## A.   The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.   The Settlement Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (citation omitted). Here, based on the volume of sales of Valeant drugs at issue in the Class Period and the evidence uncovered in discovery, the number of Settlement Class Members is far more than 40 and is likely to be at least in the thousands. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.   There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality under Rule 23(a)(2) requires the class "claims [to] depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Third Circuit has recognized the "low threshold" for satisfying the commonality prerequisite. *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *3 (D.N.J. Sept. 25, 2012) (quoting *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)). The "commonality requirement 'does not require identical claims or facts among class member[s].'" *Marcus*, 687 F.3d at 597 (alteration in original). Moreover, for purposes of Rule 23(a)(2), "'even a single common question will do.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 359); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (the commonality requirement "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class").

Here, as alleged in the Complaint, common questions of law and fact include, among others: (a) whether Defendants' acts and omissions violated RICO; (b) whether Defendants made false or misleading statements that concealed Valeant's relationship with a network of pharmacies; and (c) whether Defendants' alleged acts or omissions directly and proximately injured Plaintiffs and the Settlement Class. *See* Complaint ¶ 261. Because the resolution of these questions of law and fact would be common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.      Plaintiffs' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). "Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998).

Here, Plaintiffs' claims and injuries are typical of the Settlement Class because they all arise from the same alleged course of conduct by Defendants. Plaintiffs allege that they, like the rest of the Settlement Class, purchased or incurred costs for Valeant-branded drugs as a result of Defendants' alleged scheme. The shared factual circumstances and legal arguments supporting the claims of Plaintiffs and the Settlement Class demonstrate typicality under Rule 23(a)(3). *See Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 118 (D.N.J. 2003) ("If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory as those of other class members, the typicality requirement is satisfied.").

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) "the class representatives' interests do not conflict with those of the class members;" and (2) "class counsel is capable of adequately representing the class." *In re DVI Sec. Litig.*, 249 F.R.D. 196, 205 (E.D. Pa. 2008). Both standards are met here.

First, based upon their purchases of Valeant-branded drugs purchased from or fulfilled by Philidor or other Philidor Network Pharmacies, and the losses they suffered as a result of Defendants' alleged misconduct, Plaintiffs' interests are directly aligned with the interests of the other members of the Settlement Class, who were allegedly injured by the same alleged fraudulent scheme. In proving their own claims, Plaintiffs will also prove the Settlement Class's claims. Moreover, Plaintiffs have no interests that are antagonistic to those of the other members of the Settlement Class. Additionally, Plaintiffs have demonstrated their commitment to vigorously prosecute this case to achieve the best possible recovery on behalf of the Settlement Class.

Second, Class Counsel BLB&G and Carella Byrne are highly qualified and capable of prosecuting this Action. Class Counsel have vigorously pursued claims on behalf of Plaintiffs and the Settlement Class in this Action.[4]

## B.   The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### 1.   Common Legal And Factual Questions Predominate

When the key factual and legal issues in a case are common to all class members, the resolution of the common issues predominates over any individual issues such as individual damages calculations. As the Supreme Court has noted, predominance is a test "readily met" in cases alleging antitrust violations, which are similar to the alleged RICO violations here. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by Defendants forms the core basis of all Settlement Class Members' claims. There are numerous common issues relating to Defendants'

---

[4] Attached hereto as Exhibit A is a copy of an order in an unrelated action in which BLB&G served as Lead Counsel for SEB Investment Management AB, and as Class Counsel for the certified Class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). As reflected in the order, counsel for a competing lead plaintiff movant (which was not appointed) raised questions about BLB&G's hiring of a former employee of the lead plaintiff (SEB). Following discovery and extensive briefing, the court found that the evidence did not establish any *quid pro quo*, and allowed BLB&G to continue as Class Counsel. *See id.* at *1-2. The court in *Symantec* nevertheless ordered BLB&G to bring its order to the attention of any court in which BLB&G seeks appointment as class counsel, *see id.* at *2, so we are submitting the order to the Court's attention.

liability at the core of this action (including whether Defendants made false or misleading statements that concealed Valeant's relationship with Philidor and its network of pharmacies), which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) identifies the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, the class-action device is clearly the superior method of resolving claims of the large and geographically dispersed Settlement Class. The complexity of the claims asserted against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification, and Class Counsel is not aware of any individual actions that have been filed by any Settlement Class Members concerning the claims asserted in this Action. Moreover, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the Parties seek to certify the Settlement Class solely for the purposes of settlement. In sum, the requirements of Rule 23(b)(3) are satisfied.

### III.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Orders, Class Counsel will provide notice of the Settlements by mailing the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort, including through mailing to a well-developed database of TPPs

that the Claims Administrator, A.B. Data, Ltd., has developed and used in numerous previous TPP settlements. *See* Declaration of Linda V. Young ("Young Decl."), attached as Exhibit 4 to the Preliminary Approval Orders, at ¶¶ 3, 6.

A common Notice will provide information about both Settlements. The Notice will advise Settlement Class Members of (i) the pendency of the class action; (ii) the essential terms of the Settlements and the proposed Plan of Allocation; and (iii) information regarding Class Counsel's motion for attorneys' fees and Litigation Expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and state the procedures, as well as deadlines, for requesting exclusion from the Settlement Class, for objecting to the Settlements, the proposed Plan of Allocation, or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The proposed Preliminary Approval Orders also require Class Counsel to cause the Summary Notice to be transmitted once over PR Newswire within ten business days of the mailing of the Notice. The Claims Administrator will also place banner advertisements on several insurance and human-resource websites frequented by employees of TPPs. *See* Young Decl. ¶¶ 7-8. Class Counsel will also cause copies of the Notice and Claim Form to be made available on the Claims Administrator's website, and to be sent to any Settlement Class Member who may otherwise request them.

The form and manner of providing notice to the Settlement Class satisfy all the requirements of due process and Rule 23. The Notice and Summary Notice "provide[] all of the required information concerning the class members' right[s] and obligations under the settlement." *Prudential Ins.*, 148 F.3d at 328. The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances. *See* Young Decl. ¶ 13.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully proposes the schedule below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

| Event | Proposed Timing |
|-------|-----------------|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "Notice Date") (Preliminary Approval Order ¶ 7(a)) | 15 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | 35 days before the Settlement Hearing |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 13, 17) | 21 days before the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 days before the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 days after the Notice Date |

If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. For example, if the Court enters the Preliminary Approval Order by August 13, 2021, Plaintiffs request that the Court schedule the Settlement Hearing for November 22, 2021, or at the earliest date thereafter on which the Court's schedule will allow the hearing.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Orders. Each of the Preliminary Approval Orders will: (i) preliminarily approve the respective proposed Settlement; (ii) certify the Settlement Class, certify Plaintiffs as class representatives, and appoint BLB&G and Carella Byrne as Class Counsel, for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to Settlement Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: August 5, 2021

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**

*/s/James E. Cecchi*
   James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
JCecchi@carellabyrne.com

*Lead Counsel, Interim Class Counsel, and Local Counsel for Plaintiffs AirConditioning and Refrigeration Industry Health and Welfare Trust Fund, Fire and Police Health Care Fund, San Antonio, and Plumbers Local Union No. 1 Welfare Fund*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Hannah Ross
James A. Harrod
Jai Chandrasekhar
James M. Fee
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

*Lead Counsel, Interim Class Counsel, and Counsel for Plaintiffs AirConditioning and*

*Refrigeration Industry Health and Welfare Trust Fund, Fire and Police Health Care Fund, San Antonio, and Plumbers Local Union No. 1 Welfare Fund*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan
Jeffrey A. Barrack
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600

*Counsel for Plaintiff the Detectives Endowment Association of New York City*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Julie Goldsmith Reiser
S. Douglas Bunch
1100 New York Ave, N.W.
East Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600

- and -

Christopher Lometti
Joel P. Laitman
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797

*Counsel for Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Health Benefits Fund*